# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JUNE TERM, 1869.

————◦◦◦◦————

## BRENT vs. THE STATE.

[INDICTMENT FOR SETTING UP, OR CARRYING ON A LOTTERY, WITHOUT THE LEGISLATIVE AUTHORITY OF THE STATE, &C.]

1. *State ; what bound by, as well as individuals.*—The State, as well as an individual, is bound by the maxim that "no one is permitted to take advantage of his own wrong."

2. *" An act to establish a Mutual Aid Association, and to raise funds for the common school system of Alabama," approved 10th October, 1868 ; what may operate as, admitting it to be void, as an act of incorporation.*—The act of the 10th of October, 1868, entitled "An act to establish a mutual aid association, and to raise funds for the common school system of Alabama," if it is admitted that it creates a corporation, and is in violation of the 1st section of article XIII of the constitution, and is, therefore, void as an act of incorporation ; yet it may operate as a legislative authority, within the purview and meaning of § 3616 of the Revised Code, and may authorize the parties named in said act to do what the language of said act authorizes them to do ; that is, to set up and carry on a lottery in this State.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

All the material facts of the case appear in the opinion.

BOYLES & OVERALL, and LYMAN GIBBONS, for appellant.
JOSHUA MORSE, Attorney-General, *contra.*

[No briefs came into the reporter's hands.]

PECK, C. J.—The appellant was indicted in the city court of Mobile, at the Eebruary term thereof, in the year 1869, for a violation of section 3616, of the Revised Code. The said section is in the following words, to-wit : " Any person who sets up, carries on, or is concerned in setting up, or carrying on, any lottery or devise of like kind, without the legislative authority of this State ; or who sells, or is interested, or concerned in selling, any tickets or shares in such unauthorized lottery, must, on conviction, be fined not less than one hundred dollars, nor more than two thousand dollars."

The indictment contains three counts. The first count charges, that appellant set up, or was concerned in setting up, or carrying on a lottery without the legislative authority of this State ; or sold, or was interested or concerned in selling tickets or shares in a lottery, not authorized by the legislative authority of this State.

The second count charges, that appellant sold or offered to sell, within said county and State, tickets in a lottery or gift enterprise, without having first paid the tax required by the provisions of the revenue law of said State, to be paid before engaging in said business.

The third count charges, that said appellant, on each and every day of the months of November and December, 1868, sold or offered to sell, within said county and State, tickets in a lottery, or gift enterprise, without having first paid the tax required to be paid, by the provisions of the the revenue law of said State, before engaging in said business.

The appellant demurred to the whole indictment, and specified for cause of demurrer, that there is a misjoinder of counts in said indictment, and different offenses charged in the first, from what are charged in the two last counts, and different punishments, in kind, are visited upon them. He also demurred to each count, and for causes of demurrer, alleges, that as to the two last counts, there is no law in existence, authorizing a conviction on either of said two last counts, or making the facts charged therein, an indictable offense ; and, as to the said first count, that the law

on which it is based, was repealed before the indictment was found.

The court sustained the demurrer to the two last counts, and overruled it as to the first count; appellant then pleaded not guilty. Thereupon a trial was had, and the appellant was convicted by the jury, and fined one hundred dollars.

On the trial, a bill of exceptions was signed and sealed, at the instance of the appellant, in which all the evidence in the case, and the charge of the court, are fully set out. The bill of exceptions states that the solicitor read to the jury the first count in the indictment, being the count to which the demurrer was overruled. Thereupon, the appellant admitted that, as agent for Parrott, Boyd & Co., he had been engaged in carrying on a lottery in the county of Mobile, within twelve months before the finding of the indictment, as one of the employees of said Parrott, Boyd & Co., who were the grantees named in the act of the 10th of October, 1868, thereinafter stated, being an act entitled "An act to establish a mutual aid association, and to raise funds for the common school system of Alabama," approved October the 10th, 1868. This, the bill of exceptions states, was all the evidence for the State.

The appellant then introduced and read to the jury, the said act of the 10th October, 1868, which contains five sections, and is found on pages 363 and 364, in the printed acts of the legislature of Alabama, passed in the year 1868.

He also introduced and read to the jury, the receipt of the treasurer of the State, for the sum of two thousand dollars, and proved that the said sum of two thousand dollars had been paid by Parrott, Boyd & Co. to the treasurer before commencing business, under, and in pursuance of the provisions of said act; that said sum of money had been, by the treasurer, deposited in the treasury of the State, in pursuance of the fourth section of said act. A copy of the said receipt is attached to, and made a part of the bill of exceptions, and is in the following words and figures, to-wit : "Treasurer's office, Montgomery, Ala., Nov. 9th, 1868. Received of W. W. Boyd, Charles D. Johnson, and

George W. Parrott, the sum of two thousand dollars, in full payment of the annual installment due from them to the State of Alabama for the year commencing November 1st, 1868, and ending November 1st, 1869, under, and by virtue of, an act to establish a mutual aid association, and to raise funds for the benefit of the common school system of Alabama,' approved October the 10th, 1868, according to the auditor's certificate. (Signed) Arthur Bingham, treasurer."

On the evidence set out in the bill of exceptions (being all the evidence in the case), the court, among many other matters, charge the jury, in substance, that the said act of the 10th of October, 1868, relied upon by the appellant, as a defense to said indictment, was void, inasmuch as it would, in legal intendment, create a corporation, if valid, and was, therefore, in violation of section 1, article XIII of the constitution, which ordains that " corporations may be formed under the general laws, but shall not be created by special act, except for municipal purposes ;" that under the law, and the admitted facts of the case, the State was entitled to a verdict.

The appellant excepted to the charge of the court, and every part of the same, and the case is here for revision, on his appeal.

The errors assigned are, the overruling of the demurrer to the first count of the indictment, and the charge of the court to the jury, as shown in the bill of exceptions.

The case has been very elaborately and ably argued, by both the counsel for the State and the appellant ; the appellant's counsel insisting that the said act of the 10th of October, 1868, does not constitute the parties named in it, and their associates, a body politic and corporate, but authorizes them, in the language of the act, to form themselves into a partnership association, with authority to set up and carry on a lottery, a business that it is not lawful for them to engage in, without legislative license or authority ; and that, if it does confer on them corporate authority, and creates a corporation by a special act of the legislature, it is not prohibited by the 1st section of article XIII of the constitution, because it is a corporation for

municipal purposes, for the reason, that it is a corporation "to raise funds for the common school system of Alabama."

The counsel for the State, on the other hand, argue that the said act does create a corporation, granting to the said parties named in it, and their associates, the powers, and investing them with the attributes of, a corporation, and, as this is done by a special act of the legislature, it is in violation of the 1st section of said article XIII of the constitution, and is null and void, and, therefore, no defense to the appellant, in this prosecution.

The view we take of this case, renders it unnecessary for us to decide whether the said act does, or does not, create a corporation, to determine whether it is in conflict with the first section of said article XIII of the constitution, because it creates a corporation by a special act of the legislature, and is not a corporation for municipal purposes. We do not intend, in this opinion, to determine either of these questions, but leave them to be settled when a proper case arises, one that requires them to be settled—a case that cannot be determined without their decision.

We hold that if it be conceded, that the said act of the 10th of October, 1869, creates a corporation, and is void, and cannot operate as an act of incorporation, because it is a special act of the legislature, and for that reason, in conflict with the said article XIII of the constitution, yet, notwithstanding, it may operate as a legislative license, or authority, within the purview and meaning of section 3616 of the Revised Code, and is, therefore, a defense to the parties named in said act of the 10th of October, 1868, their associates and agents, if prosecuted for doing what the language and plain intent of said act authorizes them to do; that is, to set up and carry on a lottery, for the purposes named and specified in the said act. To permit the State to prosecute the said parties, or their associates or agents, for so doing, will be to permit the State to take advantage of its own wrong.

We can see no good reason why the State, as well as an individual, is not to be held bound by this salutary and just maxim, that " no man shall take advantage of his own

wrong."—Broom's Legal Maxims, top page, 205. We think it clear that the appellant did not intend to violate any penal or other law of the State. In other words, that he acted in good faith, and verily believed he believed he was doing what the State, by this statute, clearly authorized him to do.

But it is insisted, on the part of the State, that everybody is presumed to know the law. This, properly understood, is true, but it is a rule of presumption, adopted from necessity, and to avoid an evil that would otherwise constantly perplex the courts, in the administration of the criminal law; that is, the plea of ignorance. Hence the maxim, " that ignorance of the law excuses no one." The courts and the profession, however, well know that this necessary rule of presumption, as often, and perhaps oftener than otherwise, presumes against the truth.

But we think the state presses this necessary rule beyond its proper measure, and insists that the appellant was not only bound to know the existence of the law, but in this case, was presumed to know this special act of the legislature was, and would be held to be, unconstitutional, and was, therefore, void and no law.

We cannot consent to carry this rule of presumption to this extent; it must be confined to presuming that all persons know the law exists, but not that they are presumed to know how the courts will construe it, and whether, if it be a statute, it will, or will not, be held to be constitutional. To extend the rule beyond this limit, will be to implicate the legislature who passed, and the governor who approved, the act, in a charge of gross immorality and dishonesty. If the appellant is to be presumed to know the act was unconstitutional, the same presumption will fix upon them the same extent of knowledge; that is, that they knew the act, when it was passed and approved, was in conflict with the constitution ; and if this be so, it will be a hard matter, we think, to clear either from this grave implication. But, we are satisfied, the rule must have the limit we give it. To hold otherwise, will take from the rule all its virtue, and make it odious to all right and just thinking men.

This view of the case will probably be decisive of it in

the court below, on another trial, and, therefore, it is not thought necessary to decide the question that is made on the demurrer to the whole indictment, for the alleged misjoinder of counts.

Let the judgment of the court below be reversed, and the cause remanded for a new trial, or further proceedings in that court.