# BROADBENT *vs.* TUSKALOOSA SCIENTIFIC AND ART ASSOCIATION.

[ACTION OF ASSUMPSIT, &C.]

1. *Tuskaloosa Scientific and Art Association; what charter of authorizes.* The Tuskaloosa Scientific and Art Association is authorized to carry on a business in the nature of a lottery, under their charter, and if it does not go beyond the powers granted them by the act of incorporation, such lottery is lawful, notwithstanding the law against setting up and carrying on lotteries in this State.

2. *Same; powers of.*—Said Association may employ an agent to aid it in carrying on its business under said act of incorporation, and is bound to pay such agent for his services in its behalf, and to repay to him money he may have expended at its request, notwithstanding the business in which the Association is engaged is a lottery business, so long as the Association, in carrying on said business, keeps within the limits of its corporate privileges.

3. *Same.*—The Tuskaloosa Scientific and Art Association is a private corporation, and at the time of its passage the State had the power to grant to such corporation license to set up and carry on a lottery, or device in the nature of a lottery, in this State, and such license makes the business of such corporation lawful. When a license is so granted to a private corporation, the power to repeal it or impair it is gone, unless the power of repeal or control is contained in the act of incorporation, or is, at the time of the passage of the act of incorporation, contained in the constitution of the State; which was not the case when said Association was incorporated.

4. *Charge; when not error to refuse.*—It is not error to refuse a charge which is not shown to have been asked in writing.

APPEAL from Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

The facts upon which the case turns are sufficiently set out in the opinion.

JOHN T. TAYLOR, for appellant.
ALEX. McKINSTRY, *contra.*

[The briefs did not come into the Reporter's hands.]

PETERS, J.—One of the first questions that meets us

at the threshold of this case is this: Had the general assembly constitutional authority to pass the law incorporating the above named Scientific and Art Association, with the privileges which it possesses? If this question receives an affirmative answer, as it unquestionably must, then, it seems to me, the chief difficulties of this case must vanish.

This act was approved on February 3, 1866, and it creates a private corporation, as its title declares, " for the purpose of encouraging science and art, and aiding the University of the State in replacing its library and establishing a scientific museum."—Pamph. Acts 1865-6, p. 269, No. 190. And it repeals "*pro tanto*," " all laws and parts of laws in conflict with the provisions " of the same.—*Ib.* p. 272, § 10. At that time the constitution declared that " schools and the means of education shall be forever encouraged in this State."—Const. Ala. 1819, Art. " Education;" Code of Ala. p. 43; also, see Const. 1866, Art. IV, § 33. This, then, was not only a power conferred, without restriction, except legislative discretion, but it was a solemn duty enjoined by the fundamental law of the State, which all its officers were bound by oath to perform.—Const. Ala. 1819, Art. VI, § 1; Code Ala. p. 41; Const. 1865, Art. VII, § 6; Rev. Code, § 43. The purpose of the act creating this corporation was evidently what the general assembly declared it to be, in its title. It is competent to consider the title of a law in seeking to know the intention of the legislative body that passed it. Under our present constitution, in this State, it is required that the title of a statute shall clearly express this intention.—Smith's Com. p. 698, § 556; *United States v. Fisher*, 2 Cr. 368; Const. Ala. 1868, Art. IV, § 2. The title of the law in question is in the following words: "An act to incorporate the Tuskaloosa Scientific and Art Association for the purpose of encouraging science and art, and aiding the University of the State in replacing its library and establishing a scientific museum."—Pamph. Acts 1865-6, p. 269, No. 190. Certainly there can be no misconception of this language. Nor can there be any rational doubt as to the legislative power to authorize the accomplishment of the purpose

proposed. The thing here intended is undoubtedly laudable and praiseworthy, and proper to be done. It is simply the execution of a command of the fundamental law.—Const. 1819, *supra;* Const. U. S. Art. I, § 8, clause 8 ; Rev. Code, p. 14. And as there was no restriction on the powers of the general assembly, they could accomplish their purpose in such manner as they thought wisest and best. They might do this by creating a private corporation, and they might confer upon this corporation such privileges as they might deem proper, to accomplish the end proposed. Among these privileges might be an authority to set up and carry on a lottery. Lotteries are not *malum in se;* they are merely *malum prohibitum.*—2 Bouv. Law Dict. p. 93, 91. Only such lotteries are criminal as are set up or carried on without authority of law. —Code of Ala. p. 586, § 3254 ; Rev. Code, § 3616 ; *Brent v. State,* 43 Ala. 297. When a corporation is once established by statutory creation, in a manner permitted by the constitution of the State, its privileges are beyond the control of legislative authority, unless the right of control is in some way reserved. There is no such reservation here.—*Dartmouth College v. Woodward,* 4 Wheat. 518 ; *Dodge v. Woolsey,* 18 How. 331 ; *Jefferson Br. Bank v. Skelly,* 1 Bla. 436 ; *Bridge Proprietors v. Hoboken,* 1 Wall, 117 ; *The Bingham Bridge,* 3 Wall, 51.

The sixth section of the act in question gives to the corporation " the power to receive subscriptions and to sell and dispose of certificates of subscription, which shall entitle the holders thereof to any articles that may be awarded to them; and the disposition of awards shall be fairly made in public, after advertisement, by casting of lots, or by lot, chance, or *otherwise,* in such manner as shall be directed by the by-laws of said corporation." And the seventh section goes on to declare that " the articles to be distributed or awarded may consist of books, paintings, statues, antiques, scientific instruments or apparatus, or any *other property or thing* that may be ornamental, valuable, or useful." The authority given in these sections is certainly very broad. It includes every thing of value. It permits the sale of " certificates of subscription," which

may be for any thing in which the corporation can deal, and in any sums the corporation may choose to emit, under its by-laws, and the distribution of awards by the casting of lots, by lot, chance, or otherwise. This is clearly an authority to set up and carry on a business having many, if not all, the essential elements of a lottery. *Solomon v. The State*, 28 Ala. 83; 2 Bouv. Law Dict. p. 82, word *Lottery*. This authority having been legally granted, it is not to be interfered with or controlled by the provisions of the Penal Code. There can be no doubt as to the legislative power to bestow it. And when once given, in the manner here granted, the power of legislative control over it is gone, until the charter expires. So far, then, as the corporation is concerned, all the criminal law of the State is repealed which stands in the way of the legal exercise of its legitimate powers. Such would be the effect of the act itself *ex vi termini*. But the general assembly has gone farther, and has repealed "*pro tanto*" "all laws and parts of laws in conflict with the provisions" of the act of incorporation.—Pamph. Acts 1865-6, p. 272, § 10.

Such a corporation may appoint an agent to aid in the transaction of its lawful business.—Story's Agency, §§ 16, 52, 53. And such agent is entitled to recover pay for his services, and for moneys expended by him for the corporation, within the scope of his powers; and the corporation may be sued for the same.—Pamph. Acts 1865-6, p. 269, § 2.

The action in this case is *assumpsit* for work and labor done, and for money laid out and paid by the plaintiff, Broadbent, for the defendant, "The Tuskaloosa Scientific and Art Association," at its request. The defendant pleaded thirteen pleas, among which were, 1st, *non-assumpsit*; 2d, set off; 3d, payment; and 4th, want of consideration. And besides these, several other special pleas, which need not be noticed, as the defense upon which the case turned might have been made under the issue of *non-assumpsit*. Upon the trial, the verdict of the jury was for the defendant, on the "issue joined;" and judgment was given against the plaintiff and for the defendant, according to this verdict.

On the trial, the plaintiff below, who is the appellant in this court, introduced in evidence the law of incorporation, which is found in the published acts of the general assembly of this State for the session of 1865–6, at pages 269, 270, 271, 272. He also introduced proof tending to show that he had done much service for defendant in the years 1866 and 1867, and had paid large sums of money for the corporation, for printing, engraving, stereotyping, apparatus, and other expenses, in order to get the scheme of operations under the above said charter, into a condition to do business. This scheme of operations is called by the witness "a lottery." But it is said to have been put in action to carry out the purposes of the law of incorporation above said, and under its authority. And what was done, seems to have been accepted by the Association in their efforts to carry on their operations under said act above referred to. And the testimony does not show that all the things procured, and services performed, and expenses paid, by said plaintiff, might not have been done legally under authority of the act of incorporation. There was no proof, so far as I can understand it, of any intentional violation of said charter, or any violation of it at all. The proof showed an indebtedness by defendant to plaintiff, on the above accounts, of a sum between ten thousand and twelve thousand dollars. The testimony also showed payments to a considerable amount, but not enough to satisfy the amount of the claims proven against the corporation.

There was also evidence offered by the defendant below, which was wholly uncontradicted, that the business of the corporation was legally conducted until September 1, 1866. And the proof did not show that after this date the mode of conducting its business had been altered by the corporation. This is but a condensed statement of the testimony, but I think it includes all that is material to this case, in the view I take of it.

Upon this testimony, the court was required by the defendant to charge the jury upon the effect of the evidence. Whereupon, the court charged the jury in the following words: "That it was a settled principle of law, that no

recovery could be had upon any contract or agreement based upon an illegal consideration; that the laws of Alabama positively prohibited the putting up or carrying on a lottery business in this State, without legislative authority; that the evidence in this case showed that the parties were engaged in carrying on the lottery business illegally, and as the plaintiff's claims were for services and advances aiding in carrying on the business, he would not be entitled to recover upon such considerations."

This charge was excepted to by the defendant. We think the exception was well taken, and that the learned judge misconcieved both the law and the facts applicable to this case. The foregoing exposition of the act of incorporation of said Association shows that they had authority of law to carry on such a lottery as the law under which they were organized permitted, though they might not have had authority to carry on every species of lottery business. The charge loses sight of this distinction. It is not based upon the whole law of the case applicable to the evidence. It ignores the law embodied in the charter of the company, altogether. The act of incorporation in this case operates as a *proviso* to the statute which makes the setting up or carrying on of lotteries a crime in this State, which excepts out of that statute this corporation, and all others like it. The corporators could not be convicted of carrying on a lottery under their act of incorporation.—*Brent v. The State*, 43 Ala. 297. Then, if to carry on a lottery under said act was permitted to the corporators, it was equally legal for the plaintiff to aid them. And the principle of law invoked in the foregoing charge, though abstractly correct, is not applicable in this case.

The charges asked by the plaintiff below do not appear to have been moved for in writing. The court was, therefore, not bound to give them. It is not error to refuse such charges.—Rev. Code, § 2756.

The charge asked by the defendant below, and given by the court, which was in these words: "That the plaintiff could not recover in this action on the counts for money paid, laid out and expended," was erroneous. It should have been refused. There was some evidence here of a

contract for money on the money count. When such is the case, a charge which takes from the jury the consideration of such evidence, is erroneous. Such is the effect of the charge in this instance.

The judgment of the court below is reversed, and the cause is remanded for a new trial.