## BOYD & JACKSON *vs.* THE STATE.

[INDICTMENT FOR SETTING UP AND CARRYING ON A LOTTERY, &C.]

1. *" The Mutual Aid Association," act creating; what it authorizes.*—The act of the general assembly of this State, approved December 10, 1868, creating the Mutual Aid Association, authorizes said association to set up and carry on a lottery such as is sanctioned by said act, and for the purposes therein named.—Pamph. Acts 1868, p. 263.
2. *Privilege granted by act of legislature, when not taken away by repeal.*— Said act confers upon the partners in said association, after the payment of the sum of $2,000 into the State treasury, as required by the fourth section thereof, the privilege of setting up and carrying on a lottery, such as is authorized by said act, for one year, and a repeal of the act granting this privilege can not take it away during the time for which the payment has been made.—Pamph. Acts 1870-71, p. 217.

3. "*No one is permitted to take advantage of his own wrong;*" *to whom applies.*—The first head-note in *Brent v. The State*, (43 Ala. 227,) repeated and affirmed ; that "the State as well as an individual is bound by the maxim, that no one is permitted to take advantage of his own wrong." [a]

APPEAL from the City Court of Montgomery.
Tried before Hon. J. D. CUNNINGHAM.

The facts appear in the opinion.

ELMORE & GUNTER, S. F. RICE, and JUDGE & HOLTZCLAW, for appellant.—1. If it be conceded that the Mutual Aid Association is a corporation, it is plainly a corporation "for municipal purposes," within the meaning of section 1 of article 13 of our State constitution ; and therefore the act creating it is valid.—*Horton v. Mobile School Commissioners,* 43 Ala. 607 ; *Gelpecke v. City of Dubuque,* 1 Wallace, 175, and cases therein cited.

2. But evidently the Mutual Aid Association is not a corporation ; it is a partnership, and has the personality or "sort of personality" which belongs to every partnership. Par. on Partn. 171, 269. It is not "an artificial person," but simply a body of natural persons associated as "partners," to whom the power of "succession," (an essential of a corporation) is not given. The act creating the privileges of that partnership treats it only as a partnership. This fact, coupled with the well settled distinction between a corporation and a partnership, (so well stated in Parsons on Partn.) disables the courts from converting it into a corporation, in order to destroy it. For there is no plainer duty on courts than that of always adopting that construction of a statute (admitting of two or more constructions) which will make the statute valid and consistent with the constitution ; "*ut res valeat magis quam pereat.*"—*Wammack v. Holloway,* 2 Ala.

The act of 1868, in relation to this partnership, belongs to that class of statutes which are "considered as propositions extended to private citizens." And when, as here, the propositions, as so made, admit of acceptance by payment of specified instalments, and are in fact accepted by the actual

Boyd & Jackson v. The State.

payment of these several instalments, in plain compliance with the terms of the propositions, all the authorities agree, that a contract is thus made and consummated, which falls within the protection of paragraph 1, of section 10, of article 1 of the constitution of the United States, and can not be impaired by any subsequent legislative enactment. *Oliver v. Lee & Co.'s Bank*, 21 N. Y. 14 ; *The State v. Heyward*, 3 Rich. (S. C.) Law Rep. 389 ; *Rouse v. Home of the Friendless*, 8 Wallace.

The authority and right conferred by the act of 1868 upon the partners and their associates, upon their proved compliance with the provisions of that act, can not possibly be inferior to those which are acquired by obtaining a license in accordance with existing law. And the right of such license can not be impaired by subsequent legislation. *Phil. Ass'n, &c., v. Wood*, 39 Penn. State Rep. 73.

The repealing act of the last session is in plain conflict with the provision of the constitution of the United States above cited ; it is also in conflict with our State constitution ; it purports to destroy vested rights and privileges, paid for in advance of their exercise, without even offering to return any part of the money obtained therefor ; its morality is as debateable as that of lotteries ; it boldly deprives citizens of their " property" without due process of law, and by the mere arbitrary judment of the legislature.

The doctrine laid down in *Brent v. The State*, (43 Ala. 227,) concludes and estops the State from indicting these defendants ; and in order to sustain the judgment of the court below that well considered decision must be overruled.

JOHN W. A. SANFORD, Attorney-General, *contra.*—1. It is conceded that the general assembly can not enact a law that impairs the obligation of contracts ; and that this rule applies as well to contracts to which the State is a party, as to contracts between its citizens.—*Fletcher v. Peck*, 6 Cranch, 87, *et seq.*

2. But this provision of the constitution does not prevent such changes in the internal policy of the State as

may be deemed expedient by its legislature.—*Barlow v. Gregory*, 31 Conn. 261.

3. The license granted by the State to the defendants and their partners to establish and carry on a lottery, is not a contract, but a mere police regulation, and may be revoked by the State.—Acts 1868, pp. 263–4; *Presbyterian Church v. Mayor of New York*, 5 Cow. 538; *Hirn v. The State*, Ohio St. Rep. 15–21; *Freleigh v. State*, 8 Mo. 606; *State v. Hawthorn*, 9 La. 389; *Bransom v. The City of Philadelphia*, 47 Penn. St. Rep. 329.

4. The defendants were, in effect, the mere agents of the State in carrying on the lottery for the benefit of the school fund. They accepted the agency on the conditions mentioned in the act, and surely the State can discontinue or change her policy in regard to this matter without being obnoxious to the charge of infringing the Federal constitution. If the law had have authorized the sale of the lottery, and the privilege had been sold, the legislature could not have repealed the statute. But as long as it was in the possession of the original managers the act was repealable. *The State v. Phelan*, 3 Harrison, (Del.) 441; *Rector of Christ Church v. City of Philadelphia*, 24 Howard, 300.

PETERS, J.—The appellants, who were defendants in the court below, were indicted at the February term, 1871, of the city court of Montgomery, for setting up and carrying on a lottery without the legislative authority of the State. The indictment was returned into court on the 17th day of March, 1871. On the trial below, the defendants were found guilty and fined one hundred dollars. For this sum, and costs, judgment was properly rendered. And from this judgment the defendants appeal to this court.

There was a bill of exceptions taken by the defendants on the trial in the court below. From this, it appears that the defendants set up in their defense a certain act of the general assembly of this State, entitled "An act to establish a mutual aid association, and to raise funds for the common school system of Alabama," approved the 10th day of October, 1868.—Pamph. Acts 1868, pp. 263, 264,

No. 43.   Under authority of this act, the defendants had the right to set up and carry on a lottery, such as the defendants were engaged in.   But it was contended, on the part of the State, that this act had been repealed before the finding of said indictment; that is, by an act entitled "An act to repeal an act entitled an act to establish a mutual aid association, and to raise funds for the common school system of Alabama," approved March 8, 1871.— Pamph. Acts 1870–71, p. 217, No. 197.   On the other hand, it was contended by the defendants, that the State could not repeal said first mentioned act, so as to deprive them of the privileges under it, and for which they had paid into the treasury of the State the sum of two thousand dollars, for the year ending in November, 1871.   The 4th section of said act first above named, is in these words: "Sec. 4.   *Be it further enacted*, That before commencing business under the provisions of this act, the said parties shall deposit in the treasury of the State, to the credit of the school fund and for educational purposes, and annually thereafter, the sum of two thousand (2,000) dollars, for the term of twenty years, or so long as they may do business under the provisions of this act within said period, during which time the business aforesaid shall be exempt from taxation, except for State purposes."—Pamph. Acts 1868, p. 264, sec. 4.   The proof showed, that this annual sum of two thousand dollars had been regularly paid into the treasury, as required by said act last above said, in the month of November in each year, since the approval of said act, and that the last payment was made in November, 1870. These facts are admitted in the argument here.

From this statement of the case, it is very evident that the defendants, when they were indicted, were acting under a license granted by legislative authority.   The repeal of the act of December 10, 1868, could not impair this right. It was the fruit of a contract, a vested right, which the State could not take away.   It was fenced about and protected by the highest principles of justice and by the supreme law.   The State had sold the privilege to set up and carry on a lottery for a year at least, and had received the

price of the privilege in advance.  This was clearly a con-
tract, which the State is forbidden to impair.  In such a
case the State is the grantor, and it is estopped by its own
act.—*Fletcher v. Peck*, 6 Cr. R. 137 ; *Dartmouth College v.
Woodward*, 4 Wheat. 657 ; *New Jersey v. Wilson*, 7 Cr. R.
164 ; *Terrel v. Taylor*, 9 Cr. R. 43 ; *Von Hoffmun v. City of
Quincy*, 4 Wall. 550 ; *Jefferson Br. Bk. v. Skelley*, 1 Black.
446.  Besides, the same principle operates in this case that
was allowed to control the decision in the case of *Brent v.
The State*, (43 Ala. 297.)  There this court very properly
say :  " We can see no good reason why a State, as well as
an individual, is not held bound by this salutary and
just maxim, that ' no man shall take advantage of his own
wrong.'—Broom's Legal Maxims, top page 205.  We think
it clear that the appellant did not intend to violate any
penal or other law of the State ; in other words, that he
acted in good faith, and verily believed he was doing what
the State, by its statute, clearly authorized him to do."—
43 Ala. 301, 302.  This reasoning precisely meets the exi-
gencies of this case, and it was a construction of the same
statute in controversy here.  The only difference between
the two cases is, that the indictment in Brent's case oc-
curred before the attempted repeal of the law, under which
the defendants in both cases acted, and in this case the in-
dictment was found after the attempted repeal.  But the
foregoing discussion shows that, in this case, this difference
can not be permitted to alter the result.

The judgment of the court below is reversed, and the
cause remanded, with instructions to the court below to
discharge the defendants in that court, said Boyd & Jack-
son, from further prosecution on the indictment in this case.