[Boyd v. The State.]

# Boyd v. State.

*Indictment for setting up and carrying on a Lottery.*

53  601
128  142

1. *Lottery; what not construed to authorize.*—Setting up or carrying on lotteries being contrary to the general law and long declared policy of the State, no uncertain or doubtful terms or provisions in a charter will be construed to authorize them.

2. *"Act to establish a mutual aid association, and to raise funds for the common school system of Alabama"; constitutionality of.*—So much of the provisions of the "act to establish a Mutual Aid Association and to raise funds for the common school system of Alabama," approved October 10th, 1868, as purport to authorize the carrying on of a lottery or games of chance, are unconstitutional, because the subject of the act as expressed in the title does not cover them.

*Overruled cases.—Brent v. The State,* 43 Ala. 297; *Boyd & Jackson v. The State,* 46 Ala. 520, and *Boyd v. The State,* in MSS., overruled on point stated in second head note.

3. *Conviction; when affirmed.*—Where a person does acts in reliance on a charter which has been pronounced constitutional, and which but for the charter would be indictable, and is afterwards convicted therefor, this court on appeal, if it deem the statute unconstitutional, is bound to affirm the conviction, notwithstanding its former decisions. (BRICKELL, C. J., dissenting.)

APPEAL from City Court of Mobile.

Tried before Hon. O. J. SEMMES.

The appellant Boyd was indicted and convicted for setting up and carrying on a lottery, without the legislative authority, &c., and fined $1,000.

Boyd claimed the right to do the acts for which he was convicted, under the provisions of the following act of the general assembly:

## AN ACT.

To establish a mutual aid association, and to raise funds for the common school system of Alabama.

SECTION 1. *Be it enacted by the General Assembly of Alabama,* That William W. Boyd, Charles D. Jackson and George W. Parrott, and their associates as partners, shall have the right and full authority to form themselves into a partnership association for the distribution of books, paintings, works of art, scientific instruments and apparatus, lands and tenements, stock and currency, and such other valuables as shall promote the object of the said partnership association, to be distributed by awards and prizes, under such rules and regulations as they may adopt, and in such place or places in this State as they may select.

SEC. 2. *Be it further enacted,* That the said parties shall have power to receive subscriptions and to sell certificates of subscription, which shall entitle the holders thereof to such.

[Boyd v. The State.]

articles as may be awarded to them, or their equivalent in currency; and such distributions shall be made in public, after due advertisement, by the casting of lots, or by lots, chance or otherwise, according to rules and regulations to be established by them.

SEC. 3. *Be it further enacted,* That before any distribution is made, a list of the articles to be distributed shall be advertised, with the value of each article annexed; and the said parties shall have the right, and it is hereby made their duty to offer premiums and prizes to the citizens of Alabama, for the best essays in science and art, and the most deserving works of art, and the most useful inventions in the mechanical sciences.

SEC. 4. *Be it further enacted,* That before commencing business under the provisions of this act, the said parties shall deposit in the treasury of the State, to the credit of the school fund and for educational purposes, and annually thereafter, the sum of two thousand ($2,000) dollars, for the term of twenty years, or so long as they may do business under the provisions of this act within said period, during which time the business aforesaid shall be exempt from taxation, except for State purposes.

SEC. 5. *Be it further enacted,* That the privileges herein granted shall continue for the term of twenty years, and that all laws contravening the provisions of this act be, and the same are hereby repealed.

Approved, October 10, 1868.

The case was tried on an agreed state of facts. By this agreement Boyd, who represented the grantees named in said act, admitted "that he was engaged in setting up and carrying on a lottery in the city of Mobile, within twelve months before the finding of the indictment, under the license granted by that act and in no other manner. The State admitted on the other hand that defendant and his firm had duly made all the payments required by the fourth section of the act, except for the years 1872 and 1873, when the money was duly tendered, but refused on the idea that the act had been repealed. It was also admitted by defendant that in carrying on the lottery, the awards and prizes were paid in currency, and no other thing was at any time distributed as prizes or awards, and that no list of articles to be distributed was advertised," &c.

It was also admitted by the State "that the acts of the defendant charged in the indictment to constitute the crime in this case, were done under and according to the license of the act above referred to, and would be legal if said original·

VOL. LIII.

[Boyd v. The State.]

grant is not unconstitutional, and if the original grant in the act of October 10th, 1868, is not repealed by the subsequent act of the legislature of the State of Alabama, passed the 8th day of March, 1871." It was further admitted by the State "that the case of *Brent* v. *The State*, reported in 43d Alabama Reports, page 297, the case of *Boyd & Jackson* v. *The State*, reported in the 46th volume Alabama Reports, page 329, and the case of *W. W. Boyd, Jr.* v. *The State*, still in manuscript and not yet reported, are all indictments under the act of October the 10th, 1868, and all involve the construction of the said act, and the above named cases, so far as reported, may be referred to as part of the evidence in the case for what they may be worth, and also the record and opinion of the supreme court in the last named case may be referred to, either as argument or evidence for the same purpose."

It was also agreed that the "judge may charge the law to the jury on the facts above stated."

The court charged the jury that "upon the agreed statement of facts and the evidence in the case, the defendant is guilty in manner and form as charged in the indictment."

To this charge defendant excepted, as also to the refusal to charge the jury, at his request, that under the admitted facts the defendant was entitled to an acquittal, and that under the facts of the case the State was estopped from prosecuting the defendant under the present indictment.

GIBBONS & PRICE, JOHN T. TAYLOR and RICE, JONES & WILEY, for appellant.—Upon acceptance and compliance with the provisions of the act of October 10th, 1868, a "contract" was made between Boyd and the State. 4 Wall. 143; 16 Wall. 232; 2 Wall. 10. When the decisions were made establishing the validity of that act, the contract became from that time forth a binding contract, and "its validity and obligation cannot be impaired by any subsequent act of legislation or decisions of courts altering the construction of the law." 1 Wall. 206; 16 Wall. 690. Nothing is in existence now which would invalidate the act which was not in existence when the three former decisions were made. If the State failed to urge such unconstitutionality then, its neglect to do so deprives it of the right to urge it now. "The party against whom a judgment has been rendered, cannot get rid of its effect as an estoppel, by the allegation of his own neglect; since, in the language of Chancellor Kent, it is a sound and salutary principle, that every person is bound to take care of his own rights and vindicate them *in due season*."

[Boyd v. The State.]

*Birckhead* v. *Brown*, 5 Sandford's Rep. 145, 147 ; cases cited on page 147, *Le Guen* v. *Gouveneur & Kemble*, 1 Johns. Cases, 502 ; *Miller* v. *Mernice*, 6 Hill, 122 ; Cooley's Const. Lim. 3d edition, top pages 47, 51, and 53.

A former judgment, which is clearly erroneous *in law*, until reversed, "binds *the parties* as an estoppel upon every question which it in fact decided, and precludes them from denying, *in any subsequent action*, either *the facts* or *the law*, upon which it proceeded." *Birckhead* v. *Brown*, 5 Sanford's Rep. 151 ; *Beloit* v. *Morgan*, 7 Wall. 621 to 623, and cases there cited ; *Gould* v. *Evansville & Craw. R. R. Co.*, 1 Otto, 526 ; Cooley's Const. Lim. 47 to 51 ; *Rakes* v. *Pope*, 7 Ala. 161 ; *Tarleton & Pollard* v. *Johnson*, 25 Ala. 300 ; *The State of Missouri* v. *Miller*, 50 Mo. 129.

The judgment will operate as an estoppel equally in criminal as in civil cases. 5 Sandford, 140. "*Nemo bis vexari debet, pro eadem causa.*"

JOHN W. A. SANFORD, Attorney General, and PERCY WALKER, *contra.*—Under the agreed state of facts it was proper to convict the defendant, even if the constitutionality of the statute be conceded. No "paintings, books, scientific instruments," &c., have been distributed—currency alone is used. No prizes have been advertised. The act is clearly unconstitutional. Its title is vague and illusory. *Mayor* v. *Moses et al*, 52 Ala. This question was never raised in the former decisions. Besides, this is one of the cases in which, as between the State and the original grantees, the privileges granted may be recalled at any time. 44 Miss. 820 ; 2 Met. (Ky.) 598 ; 8 How. 163 ; 46 Ala. 603 ; 10 How. 511–14. The doctrine that the State is estopped from prosecuting an offender now, because it failed before, when opportunity offered, to raise a constitutional question against the validity of an act licensing an immoral enterprise like a lottery, is, to say the least of it, very dangerous, and very sweeping in its effect. "It is a familiar doctrine that the State is not embraced within statutes of limitations, unless specially named, and by analogy would not fall within the doctrine of estoppel. Its rights, revenues and property would be at fearful hazard should this doctrine be applicable to a State. A great and overshadowing public policy of preserving these rights, revenues and property from injury and loss, forbids the application of the doctrine." *State of Illinois* v. *Brown*, Central Law Journal No. 34, August, 1875.

STONE, J.—The appellant, defendant in the court below,

[Boyd v. The State.]

was indicted and convicted in the city court of Mobile under section 3616 of the Revised Code, which declares that "any person who sets up, carries on, or is concerned in setting up or carrying on any lottery, or device of the like kind, without the legislative authority of this State, . . . . must on conviction be fined not less than one hundred nor more than two thousand dollars." The indictment literally follows the form given in the Revised Code. See form 26. It is not denied that the defendant set up and carried on a lottery with its customary machinery, and that prizes in currency were drawn and distributed. The defense is that the defendant did only what he was authorized to do under the act "to establish a mutual aid association, and to raise funds for the common school system of Alabama." Session acts 1868, page 263. To this defense it is replied that the said act, at least that part of it which, it is claimed, authorized the setting up of a lottery, is violative of the second section of article 4 of the constitution, which declares that "Each law shall contain but one subject, which shall be clearly expressed in its title."

The clause under discussion, in language substantially similar, is found in many of the State constitutions. It is said to be of comparatively recent origin. Its aim was to correct abuses which had grown up, to the scandal of legislative bodies. This court said in *Ex parte Pollard*, 40 Ala. 99, that the object of this constitutional provision was "to prevent deception by the inclusion in a bill of matter incongruous with the title." The reasons assigned for the incorporation of this new feature into the organic law of the States, are somewhat differently stated by the several appellate tribunals. They are collected by Mr. Cooley in his admirable work on Constitutional Limitations, page 142. He sums them as follows : *"First*, to prevent *hodge-podge*, or log-rolling legislation; *second*, to prevent surprise or fraud upon the legislature, by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, *third*, to fairly apprise the people through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order tnat they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." Pages 143–4. We concur with Mr. Cooley in the reasons stated by him for the enactment of this constitutional provision, but think that the first and second were by far the most controlling.

But while giving full effect to the provision quoted above

[Boyd v. The State.]

in its admitted purpose to prevent "log-rolling, surprise and fraud," we must be careful, in the application of this rule, not to allow ourselves to be carried so far as unduly to cripple and embarrass legislation. It is not essential that the title of a statute shall define or disclose the subject with the most precise accuracy. It is enough if the subject be *one*, and that the title so express that subject, as that the reader will readily understand the several provisions of the enactment as being embraced in, or referable to that subject. See *Ex parte Pollard, supra.*

The caption of the act we are construing is "to establish a mutual aid association, and to raise funds for the common school system of Alabama." Whether this title embraces two subjects, or whether the two purposes are so connected as to become one subject, we deem it unnecessary to determine in this case. Mutual aid, however, would seem to imply an association or enterprise entered upon by more persons than one, for reciprocal support, aid or assistance between the associates. To predicate mutual aid of a partnership or joint adventure, in any of the ordinary avocations, formed or conducted on joint account and for common profit, is certainly a strained construction of language. Nor is it easy to perceive how such joint adventure for mutual profit, and the raising of funds for the common school system of Alabama, can become one subject. But, as we have said, we do not decide this question.

The defendant set up and carried on a lottery. Under the general law, lotteries in Alabama are prohibited. Unless the statute under discussion authorized it, the defendant violated the general law. We have carefully considered the agreed facts in this case, and the statute under which they are claimed to be justified, and we are at a loss to find in the statute any warrant for the plain, undisguised lottery which the defendant set up and carried on. There was no "distribution of books, paintings, works of art, scientific instruments, apparatus, lands or tenements, stock, or other valuables," save *currency.* We hear of no "subscriptions" received, or certificates of subscription issued; no advertisement made, giving list of articles to be distributed, with the value of each article annexed. Perhaps this was not considered necessary, as currency, which is a standard of value, is the only commodity distributed, so far as the record informs us. Although the statute imposed the "duty" on the "partnership association" to "offer premiums and prizes to the citizens of Alabama for the best essays in science and art, and the most deserving works of art, and the most use-

[Boyd v. The State.]

ful inventions in mechanical sciences," yet we are not informed that any step was ever taken to perform this most commendable feature of the enterprise.   These views of the statute, and of the rights and powers it was intended to confer, leave it very questionable if we could affirm that the statute invoked, even if there were no doubt of its constitutionality, authorized the setting up of a lottery, as shown in this record.

But even if the right to set up and carry on a lottery is conferred in the body of the statute, it is not expressed in the title.   Never was language employed less apt to convey to the mind, learned or unlearned, the idea that the partnership association—the mutual aid society—was to be an undisguised lottery ; and that the encouragement of letters, the promotion of science and the arts which it proposed, was the uncertain prize, in currrency, which might fall to the ticket holder.

During the last three centuries most of the commercial nations of Europe and America have made the experiment of licensing and tolerating lotteries.   In almost every instance, after trial, they have been condemned and prohibited as a species of gaming, and injurious to public morals. Such was their fate in England and in France.   Such has been their fate in almost every State of this Union.   They are now prohibited by the constitutions of more than half the States of the American Union.   See American Cyclopedia, title Lottery.

In Alabama we have long had statutes forbidding and punishing lotteries ; and our present constitution, article 4, section 26, declares that "the general assembly shall have no power to authorize lotteries or gift enterprizes."   A practice, so universally condemned throughout the whole domain of enlightened jsrisprudence, should surely rest its claim to legislative authorization upon a more solid foundation than doubtful implication.

In the case of *Moses & Beebe* v. *Mayor and Aldermen and Common Council of Mobile*, 52 Ala. 198, this court held that the act "to establish the Mobile Charitable Association, for the benefit of the common school fund of Mobile county, without distinction of labor," so far as it was supposed to authorize lotteries and games of chance, was unconstitutional, because the subject was not clearly expressed in the title.   No distinction can be drawn between that case and this which will benefit the present appellant. In fact, we consider the title to the statute we are construing less apt and more delusive than was the title to the act

[Boyd v. The State.]

which was construed in that case. The reasoning then employed we consider unanswerable. Being fully satisfied that case was correctly decided, to preserve harmony of decision we feel compelled to hold the same features in the present act unconstitutional.

We are aware that with more or less unanimity the statute declared above to be unconstitutional, has been by this court adjudged to be constitutional and valid in three several decisions. In those cases the constitutional question above discussed was neither presented nor considered. We regret the necessity we are under to depart from the rulings of our predecessors. We regret it all the more, because those several decisions have no doubt been relied on by the appellant as authorizing him to do the act for which he was convicted. The relief is not with us. There being in the statute no constitutional provision which authorized the setting up of a lottery, we have no discretion or dispensing power, by which to relieve the appellant of the penalty of his offense. The doctrine of estoppel has no application to such a case.

The majority of the court hold that the judgment of the city court must be affirmed.

Chief Justice BRICKELL agrees with us in holding that the statute above referred to, so far as it is supposed to authorize a lottery, is unconstitutional, for the reasons stated. He thinks, however, that inasmuch as said statute has been pronounced valid by this court in the several cases of *Brent* v. *The State*, 43 Ala. 297 ; *Boyd & Jackson* v. *The State*, 46 Ala. 329, and *W. W. Boyd, Jr.* v. *The State*, in manuscript, the defendant cannot properly be convicted under this indictment. He cites *Lyon* v. *Richmond*, 2 Johns, Ch. 51 ; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175 ; Cooley's Cons. Lim. 47, and notes, in support of his views.

The majority of the court think that the case of *Lyon* v. *Richmond* only decides the familiar principle that courts will not interfere to correct mere mistakes of law. In fact we consider the case cited an authority in support of our views.

We all agree that there is no constitutional statute authorizing the act of which the defendant was convicted. It would be an anomaly in the law if we were to hold that the defendant is guiltless, when there is no dispute that he violated the only constitutional statute on the subject.

BRICKELL, C. J. (dissenting).—Since 1810 it has been the law of this State that the setting up or carrying on lotteries not authorized by the law of the State is an indictable offense. The first statute employs the expressions, *unless*

[Boyd *v.* The State.]

*authorized by law.* Aik. Dig. 209, § 2. The penal Code of 1841 uses the words, *without special permission from the legislature.* Clay's Dig. 434, § 20. The words of the Code of 1852, and of the present statute, are, *without the legislative authority of this State.* The difference of phraseology in the several statutes is not material—it does not indicate any change of legislative intent; the several phrases are equivalent in meaning. They refer to authority conferred by legislative enactment—an enactment having within the State the force and effect of law. *Commonwealth* v. *Dana,* 2 Metc. 329; *Solomon* v. *State,* 37 Ala. 26; *Same* v. *State,* 28 Ala. 83. Such was the practical construction of the several statutes; and since 1810 lottery schemes whenever existing in the State have been authorized by special legislative enactment, adopted in the mode and under the forms prescribed by the constitution for the exercise of legislative power.

Legislative authority, or authority of law, cannot be conferred without an observance of constitutional limitations. Whatever forms or modes the constitution has marked out and prescribed, to be observed by the law maker, narrow and limit his power, if not otherwise expressed in the enactment of private or special as well as in the enactment of public or general laws—in the grant of authority to individuals to do that which without such grant would not be lawful as in the repeal of the law which renders the grant necessary. The general constitutional limitation that "Each law shall contain but one subject which shall be clearly expressed in its title," is of the same force in the grant of authority, which has the force and effect of law dispensing with the operation and affording immunity from a general penal statute, as in the enactment or repeal of such statute. The general assembly cannot disregard it, in the one case or the other.

I freely concur with the majority of the court, that the act of the general assembly under which the appellant claims authority to set up and carry on a lottery, is an infraction of this constitutional limitation and cannot, therefore, be deemed legislative authority. I incline to the opinion, if the statute could be regarded as constitutional, it was competent for the legislature to repeal it, and that it was repealed by the act of March 8, 1871. (Pamph. Acts 1870–71, p. 271); *Moore* v. *State,* 48 Miss. 147, and authorities cited. I am nevertheless constrained to the conclusion that these questions have been finally adjudicated against the State, and in favor of the appellant in the three cases heretofore before this court. The first of these is the case of *Brent* v. *State,*

39

43 Ala. 297, The appellant was indicted and convicted for setting up and carrying on a lottery. There were three counts in the indictment, but a demurrer was sustained to two of them and the trial and conviction was had under the first, which is identical in legal effect with the present indictment. The appellant justified as the agent of the present appellant and the other grantees named in the act of October 10th, 1868. The court below held the act violative of the first section of the thirteenth article of the constitution of 1868, forbidding the creation of other than municipal corporations by special act. This court without passing on that question, declared if the act was violative of that clause of the constitution, it could nevertheless operate as a legislative authority or license relieving from the penalty denounced by the statute, (R. C. § 3615), under which the indictment was found. It was further declared the language and plain intent of the act was to authorize the setting up and carrying on a lottery; that the State was estopped in a criminal prosecution from averring the invalidity or unconstitutionality of the act; and those acting under it were presumed to know only its existence and not whether it would be by the courts pronounced unconstitutional. Whatever may be said of the correctness of this decision, and I am far from expressing any concurrence in it, the fact is indisputable that it stands a solemn, deliberate adjudication, that the appellant, his associates, and their agents, had legislative authority protecting them from indictment for setting up and carrying on a lottery. The State was a party to, and the actor in, that prosecution. Every question whether of law or of fact involved in the present prosecution, was involved and necessarily adjudicated in that decision. The justification in that case was under the act of 1868, which, if legislative authority, is an authority for the term of twenty years from its enactment, embracing not only the time covered by that indictment, but also the time covered by the present indictment. That the acts for which the present appellant stands indicted are subsequent in point of time to those for which Brent was indicted is not material. The point in issue is the same—the existence of legislative authority to set up and carry on a lottery—the sufficiency of the act of October 10, 1868, as such authority, which if authority then to Brent, appellant's agent, is of equal authority to the appellant now. If authority at all, it is a continuous authority, enduring for the term of twenty years, the parties acting under it performing the condition imposed of

an annual payment into the treasury of two thousand dollars.

Brent's case was succeeded by *Boyd & Jackson* v. *State*, 46 Ala. 329, an indictment identical with the present against the appellant and another. The decision in Brent's case was approved, and it was expressly declared, "under authority of this act" (the act of October 10, 1868), the defendant had a right to set up and carry on a lottery such as the defendants were engaged in." The manner in which it was shown the defendant carried on the lottery, was the same in which the appellant was shown to have conducted it. The indictment was found after the passage of the repealing statute of March 8th, 1871, but before its enactment the appellants had made the annual payment into the treasury, required, and the term of a year had not elapsed when the indictment was found. The court held that the payment conferred a right or privilege the repealing statute could not impair or take away. This case was followed by that of *W. W. Boyd, Jr.* v. *State*, (in MSS. June Term, 1874), in which an indictment identical with the present had been found against the appellant, and on which he was convicted. The acts supposed to render the appellant indictable, except as to the time of their occurrence, are the same now impotent. This court declared the act of October 10th, 1868, was to be regarded as a contract between the State and the grantees therein named, which no subsequent legislation could impair or take away, and reversed the judgment of conviction, rendering judgment here dismissing the prosecution.

It is apparent that though, in neither of these cases, this court rested its judgment on a constitutional correspondence of the title to the body of the act of October 10, 1868, the sufficiency of that act as legislative authority to the privy indicted for setting up and carrying on a lottery in the manner this appellant is shown to have acted, was the material issue—was the controlling question adjudicated. It is not necessary to inquire whether the appellant was a party to the judgment in Brent's case, so as to rely on its conclusiveness. Whatever was involved in that adjudication, whatever was essential to the justification and acquittal of the defendant in that case, or to his conviction, was essential to the acquittal or conviction of the appellant in the subsequent cases to which he was a party. In all the cases, the material inquiry was of law, not of fact; for in none of them were the facts matter of dispute, but were admitted, and were the same found in this record. The inquiry—the point in issue—the point adjudged—was the sufficiency of

[Boyd *v.* The State.]

the act of October 10, 1868, as legislative authority to set up and carry on lottery; and its sufficiency was affirmed.

The finality and inviolability of judgments of a court of competent jurisdiction, not assailed on error or appeal, rests on an inflexible and conservative principle of law. Whether the judgment is interposed by plea as a bar or as evidence between the same parties, or their privies, it is conclusive of the matter directly in question. It is beyond question, it is final and absolute, however erroneous, or whatever of injustice it may work; it is a conclusive determination of the particular controversy. Judge Cooley, pursuing the authorities, clearly and accurately expresses the principle: "A decision once made in a particular controversy, by the highest court empowered to pass upon it, is conclusive on the parties to the litigation and their privies, and they are not allowed afterwards to revive the controversy in a new proceeding, for the purpose of raising the same or any other question. The matter in dispute has become *res adjudicata,* a thing definitely settled by judicial decision; and the judgment of the court imports absolute verity. Whatever the question involved—whether the interpretation of a private contract, the legality of an individual act, or the validity of a legislative enactment—the rule of finality is the same. The controversy has been adjudged, and once finally passed upon, is never to be renewed. It must frequently happen, therefore, that a question of constitutional law will be decided in a private litigation, and the parties to the controversy, and all others subsequently acquiring rights under them in the subject-matter of the suit, will therefore become absolutely and forever precluded from renewing the question in respect to the matter then involved. The rule of conclusiveness, to this extent, is one of the most inflexible principles of the law, *insomuch that even if it were subsequently held by the courts that the decision in the particular case was erroneous, such holding would not authorize the re-opening of the old controversy in order that the final conclusion might be applied thereto.*" Cooley's Con. Lim. 47. Mr. Bigelow states the rule "that a point once adjudicated by a court of competent jurisdiction, however erroneous the adjudication, may be relied upon as an estoppel in any subsequent collateral suit, in the same or any other court, at law or in chancery, or in admiralty, when either party, or the privies of either party allege anything inconsistent with it; and this, too, whether the subsequent suit is upon the same or a different cause of action." Bigelow on Estoppel, 45. The principle has been often recognized and enforced by this

[Boyd *v.* The State.]

court, and lies at the foundation of numerous decisions. *Bobe* v. *Stickney*, 36 Ala. 482 ; *Mervine* v. *Parker*, 18 Ala. 241 ; *Roberts* v. *Heirn*, 27 Ala. 678 ; *Derrett* v. *Alexander*, 25 Ala. 265 ; *Tarleton & Pollard* v. *Johnston, Ib.* 300 ; *Langdon* v. *Raiford*, 20 Ala. 532 ; *Rake's Adm'r* v. *Pope*, 7 Ala. 161 ; *Trustees, &c.,* v. *Kellar*, 1 Ala. 406 ; *Thomasson* v. *Odom*, 31 Ala. 108 ; *O'Neal* v. *Brown*, 21 Ala. 482. The long line of decisions declaring that a decision of this court, however erroneous, was the law of the particular case, and could not be questioned in the primary court, or on a second appeal, was not the expression of a mere rule of practice, but was founded on the conclusiveness of judgments.

The principle is as applicable to judgments in criminal cases as to judgments in civil cases. "An acquittal or a conviction, under an indictment for an offense, is a bar to any subsequent indictment substantially like the former." Freeman on Judgments, § 318. Indeed, in criminal cases the principle rests not only on the general proposition that a matter which has fairly passed to final adjudication cannot be again the subject of litigation between the same parties, but also on the constitutional guaranty against double vexation for the same offense—a guaranty inviolable whether the accusation involves a felony or a misdemeanor only. *McCauley* v. *State*, 26 Ala. 135.

This prosecution is but a renewal of the former prosecutions which have passed into judgments of acquittal by the deliberate adjudications of this court. No new fact is introduced which can take the present case without the control and conclusiveness of those adjudications. That the facts now relied on are subsequent in point of time to the facts relied on in the former cases, is not material. An adjudication now, that the act from which legislative authority is derived confers it, would be an adjudication not only that the particular acts proved were legal when done, but an adjudication that the same acts, for the period prescribed by the act of the legislature, would be legal, the appellants observing the condition of an annual payment into the treasury, or a tender of such payment. The matter of controversy, the point to be decided, is the sufficiency of the legislative act as legislative authority for an act continuous in its nature during the period of twenty years from its enactment. Such would be the effect and operation of an adjudication in this case in favor of the appellant, and such is the effect and operation of the former adjudications.

The effect of the former adjudications, as a matter of authority merely, in controversies between strangers, is not

[Boyd *v.* The State.]

now the subject of inquiry. In my judgment they are erroneous, and it will be the duty of the court, if such controversy arises, to overrule them. But they seem to me, as between the appellant and the State, definitive adjudications of all the matters in controvery, binding and conclusive, forever quieting and silencing litigation. The first and fourth charges requested by the appellant should have been given by the city court. They rest on the finality of the former judgments. I cannot, therefore, assent to the affirmance of the judgment.

NOTE BY REPORTER.—At a subsequent day of the term, appellant applied for a rehearing, to which the following response was made by :

STONE, J.—Many of the authorities relied on for a rehearing and change of decision in this cause present only the question of the conclusiveness and finality of unreversed judgments. The rule is universal that whenever a contestation has been had before a court having jurisdiction of person and subject matter, the decision pronounced is conclusion, for all time, between the parties to suit and their privies, upon the same rights connected with the same subject-matter. See Cooley's Con. Lim. 47, *et seq,* and the numerous authorities cited by him.

The rule, however, to be applicable and binding, requires that the second contestation shall involve the indentical issue, either of law or fact, as the case may be, that was pronounced upon in the former suit ; and it must arise between the identical parties litigant, or their privies in blood or estate. See authorities *supra,* and *Van Alstine* v. *Indiana P. & C. Railroad Co.* 34 Barb. 28 ; *Taylor* v. *McCracken,* 2 Black. 261 ; *Cook* v. *Viriont,* 6 T. B. Monroe, 284 ; *Spencer* v. *Dearth,* 43 Ver. 98 ; *City of Davenport* v. *The C. R. I. & P. R. R. Co.* 38 Iowa, 633–39–40.

This principle has been held to embrace successive suits for different breaches of the same contract, so far as there is a unity of subject-matter common to the several suits. It also governs the case of a single contract payable in installments, on which successive suits are brought. *Rakes* v. *Pope,* 7 Ala. 161 ; *Gardner* v. *Buckbee* 3 Cow, 120. The case of *Beloit* v. *Morgan,* 7 Wall. 621, carries the doctrine something further than any case we have examined.

In the case of *Gelpcke* v. *City of Dubuque,* 1 Wall. 175, the sole question was whether supreme court of the United States was required to conform to a new and later decision

[Waring v. Lewis.]

of the supreme court of Iowa on a question arising under the constitution of that State—the said later decision of the Iowa court having departed from and overruled several former decisions of the same court, which affirmed the constitutionality of the Iowa statute in question. Under the former decisions of the Iowa supreme court, bonds of the city of Dubuque, in large amount, had been issued and disposed of. The United States supreme court refused to follow the later ruling of the Iowa court, and held the Iowa statute constitutional.

The case of *The State of Missouri* v. *Miller*, 50 Missouri, 129, rests on the case of *State of Missouri* v. *Hawthorn*, 9 Mo. 385. It was neither ruled nor claimed in argument that the Missouri statute was unconstitutional.

It will be seen by an examination of the cases above that none of them present the question we are considering; and we do not consider that they shake, in the least, the foundation on which our decision rests. In none of them was it decided or contended that any right existed, or could be maintained, which rested alone on a statute which the court pronounced unconstitutional.

In the present case, we must affirm or reverse the judgment of the court below. If we affirm, we concede that a seeming hardship is imposed on the appellant. The remedy, if any, is not with us. If we reverse, the inevitable result is that the "associate partners" enjoy an irrevocable license and monopoly to set up and carry on a lottery in this State for the term of twenty years, to end in October, 1888; and that in disregard of our present constitution, and claimed only under the forms of an enactment which every member of this court considers to be clearly unconstitutional.

Application for a rehearing overruled.