26 So.2d 519

**KRASNER v. STATE.**

6 Div. 232.

Court of Appeals of Alabama.
Jan. 22, 1946.

Rehearing Denied Feb. 19, 1946.

Reversed on Mandate June 11, 1946.

J. T. Johnson, of Oneonta, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant was indicted for the offense of criminal libel in violation of Section 347 Title 14, Code of Alabama, 1940. The indictment was in the following form:

"The Grand Jury of said county charge that, before the finding of this indictment, Norman Krasner did unlawfully and maliciously publish of and concerning L. A.

Bowers, the mayor of the Town of Warrior, the following libelous matter, to-wit:

" 'Mayor pockets over One Thousand Dollars of Warrior's Public Funds;' the said libelous matter had a tendency to provoke a breach of peace, against the peace and dignity of the State of Alabama."

Appellant attacked the sufficiency of the above indictment both by motion to quash and demurrers, the ground being:

1. That it fails to allege any violation of the laws of Alabama and does not follow the Code form.

2. That it is violative of Sections 1, 4, and 6 of the Alabama Constitution, and of Amendments 1 and 14 of the United States Constitution, "allowing and guaranteeing freedom of speech, freedom of press, due process of law, the right to life, liberty and the pursuit of happiness, the right to review, discuss and expose the conduct, deportment, incompetency and/or corruption on the part of a person or persons charged with the administration of government, or a division or subdivision thereof."

3. That it is violative of Section 22 of the Alabama Constitution prohibiting any law making exclusive grants of special privileges.

4. That it is violative of Section 12 of the Alabama Constitution which provides:

"That in all prosecutions for libel or for the publication of papers investigating the official conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence; and that in all indictments for libel, the jury shall have the right to determine the law and the facts under the direction of the court."

5. That said publication alleges that the Mayor of Warrior, a public official, received and kept certain fees while acting in an ex officio capacity in violation of Section 600, Title 37, Code of Alabama 1940, providing that the Mayor may remit fines and costs to the city or town, and in violation of Section 68 of the Constitution of Alabama providing that no municipal authority has the right to grant any extra compensation to any public officer, agent, or servant, during their term of office, or to increase their fees or compensation during such term.

The court denied the motion to quash the indictment and overruled the demurrers.

It is our opinion that the first ground alleging that the indictment fails to allege any violation of the laws of Alabama is without merit. In Brooke v. State, 154 Ala. 53, 45 So. 622, 623, our Supreme Court in discussing indictments for criminal libel wrote:

"Section 5064 of the same Code, relative to the indictment, is as follows: 'An indictment for a libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the indictment is founded; it is sufficient to state generally that the same was published concerning him, and the fact that it was so published must be proved on the trial.' No form is prescribed in the Code for the indictment; but it is manifest from the statute that the technicalities of the common law in the frame of an indictment for libel are not required. Indeed, it has been the policy of the Legislature to depart from all common-law technicalities, and to simplify pleading in indictments as much as possible consistent with the due administration of justice. The statute punishing libel does not define what libel is, as do statutes of some of the other states. We are therefore remitted to the common law to ascertain what is libel, and whatever at the common law amounted to a libel was subject to criminal prosecution. The only difference made by our statute is that the libel must be such as to have a tendency to provoke a breach of the peace. In 2 Wharton's Criminal Law (9th Ed.) 1598, it is stated: 'Whatever, if made the subject of civil action, would be considered libelous without laying special damage, is indictable in a criminal court.' But our statute (section 5063) makes a qualification of this by providing: 'Which may tend to provoke a breach of peace.' Moody v. State, 94 Ala. 42, 10 So. 670." ·

Criminal libel has had numerous definitions. Perhaps as good as any is the definition found in Wharton's Criminal Law, 12th Ed. (Ruppenthal), as follows:

424

"A defamatory libel is matter published without legal justification or excuse, the effect of which is to insult the person of whom it is published, or which is calculated to injure the reputation of any person by exposing him to hatred, contempt, or ridicule. Such matter may be expressed either in words legibly marked upon any substance whatever, or by any object signifying such matter otherwise than by words, and may be expressed either directly or by insinuation or irony."

Under Section 347 of Title 14, Code of Alabama 1940, the libel must be one which may tend to provoke a breach of the peace.

It is noted that the libellous matter set forth in the indictment is that "Mayor pockets over One Thousand Dollars of Warrior's Public Funds," without any explanation of the meaning of the words by innuendo. We do not think such explanation necessary in this case. One of the definitions given of the verb "pocket" in Webster's New International Dictionary, 2nd Ed., Unabridged, is "to take (money, etc.) esp. secretly or fraudulently." A court should not close its ears to ordinary meanings commonly attached to words, and certainly in ordinary parlance the above words charged the Mayor with misappropriation of the public funds of Warrior as clearly as if the offense had been more artfully defined in the publication. Ultimate justice should not depend on art of language. With such meaning attached, then certainly the words were such as to lead to a breach of the peace, as well as falling within the Common Law concept of criminal libel.

It is our opinion that the action of the court in its treatment of the other grounds of attack on the indictment was correct, reasons for this conclusion appearing later in this opinion.

▮ The constitutional rights and privileges, the right to expose incompetency in office, to discuss current happenings of the day, etc., set forth by appellant in defense of his actions may, we think, be jointly discussed and disposed of, the same general principles being applicable to all.

In Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626, 628, Judge Knight said:

"Among the undoubted rights of the press may be mentioned right to advocate change in form of government by peaceful means; to expose incompetency and corruption on the part of those charged with the administration of the affairs of the government; and the right at all times to place before its readers, in printed form, the current happenings of the day.

"This constitutional liberty of the press is so intimately interwoven with the right to acquire and hold property, to enjoy life and the pursuit of happiness, that it falls squarely within the protection of section 1 of the Constitution, which guarantees to every citizen the right of life, liberty, and the pursuit of happiness, and also comes within the protection of section 6 of the State Constitution and of the Fourteenth Amendment to the Federal Constitution guaranteeing to every person due process of law, both judicial and legislative. Any denial to the press of this constitutional right by the courts, or by the Legislature, or any limitation superimposed upon this right, save for abuse, would inflict a wound just short of the heart upon this useful agency, so sedulously protected by the Constitution."

These rights and privileges are not absolute. They do not confer a right of licentious action. As said by Judge Story:

"'The freedom of the press and of speech, which Congress, by the First Amendment to the Federal Constitution is prohibited from abridging,' says: 'That this amendment was intended to secure to every citizen an absolute right to speak, or write, or print whatever he might please, without any responsibility, public or private, therefor, is a supposition too wild to be indulged by any rational man. * * * It is plain, then, that the language of this amendment imports no more than that every man shall have a right to speak, write, and print his opinions upon any subject whatsoever, without any prior restraint, so always that he does not injure any other person in his rights, person, property or reputation; and so always that he does not thereby disturb the public peace, or attempt to subvert the government.' 2 Story on the Constitution (5th Ed.) pp. 634, 635."

■■ The Supreme Court of the United States has said, in Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 630, 69 L.Ed. 1138, that:

"It is a fundamental principle, long established, that the freedom of speech and of the press which is secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. 2 Story on the Constitution (5th Ed.) § 1580, p. 634; Robertson v. Baldwin, 165 U.S. 275, 281, 17 S. Ct. 326, 41 L.Ed. 715; Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879, 10 Ann.Cas. 689; Fox v. Washington, 236 U.S. 273, 276, 35 S.Ct. 383, 59 L.Ed. 573; Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470; Frohwerk v. United States, 249 U.S. 204, 206, 39 S.Ct. 249, 63 L.Ed. 561; Debs v. United States, 249 U.S. 211, 213, 39 S.Ct. 252, 63 L.Ed. 566; Schaefer v. United States, 251 U.S. 466, 474, 40 S.Ct. 259, 64 L.Ed. 360; Gilbert v. Minnesota, 254 U.S. 325, 332, 41 S.Ct. 125, 65 L.Ed. 287; Warren v. United States, 106 C.C.A. 156, 183 F. 718, 721, 33 L.R.A.,N.S., 800. Reasonably limited, it was said by Story in the passage cited, this freedom is an inestimable privilege in a free government; without such limitation, it might become the scourge of the republic.

"That a State in the exercise of its police power may punish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime, or disturb the public peace, is not open to question. Robertson v. Baldwin, supra (165 U.S. 275) page 281, 17 S.Ct. 326 (41 L.Ed. 715); Patterson v. Colorado, supra (205 U.S. 454) page 462, 27 S.Ct. 556 (51 L.Ed. 879, 10 Ann. Cas. 689); Fox v. Washington, supra (236 U.S. 273) page 277, 35 S.Ct. 383 (59 L.Ed. 573); Gilbert v. Minnesota, supra (254 U. S. 325) page 339, 41 S.Ct. 125 (65 L.Ed. 287); People v. Most, 171 N.Y. 423, 431, 64 N.E. 175, 58 L.R.A. 509; State v. Holm, 139 Minn. 267, 275, 166 N.W. 181, L.R.A. 1918C, 304; State v. Hennessy, 114 Wash.

351, 359, 195 P. 211; State v. Boyd, 86 N. J.Law, 75, 79, 91 A. 586; State v. McKee, 73 Conn. 18, 27, 46 A. 409, 49 L.R.A. 542, 84 Am.St.Rep. 124."

■ It is axiomatic that a criminal libel must of necessity amount to an abuse of the above constitutional rights and privileges, and remove the perpetrator thereof from the beneficent protection otherwise afforded.

■■ At common law the truthfulness of the libellous statement where same had a tendency to lead to a breach of the peace was no defense, on the theory that when the peace is breached the public are justly placed in the character of an offended prosecutor, and the peace may as well be breached by a true statement as by a false one. Our rule on this question of the truthfulness of the libellous statement is governed by the provisions of Section 12 of the Alabama Constitution of 1901, supra. However in Brooke v. State, supra, our court said:

"The constitutional provision is silent as for what purpose or to what extent the evidence is admissible, whether in justification or mitigation. The constitutional provision does not imply that the libel must be shown to be false."

Since the appellant did not put on any evidence in the trial below it appears that the ruling of the lower court as to the grounds set forth in Par. 5, supra, was correct.

The evidence presented by the State clearly shows that appellant caused to be printed the political dodger containing the above mentioned statement, and that this dodger was by him circulated in Warrior and vicinity during the campaign for Mayor of that town in 1941. One of these dodgers was without objection received in evidence in its entirety.

Innumerable objections were interposed to the admission of testimony by both sides. To comment on all would unduly extend this already overlong opinion. The court's ruling on these objections was in our opinion without reversible error.

■ By a number of questions propounded to B. T. Williams, employee of the Dubose Printing Company, on cross ex-

426

amination, appellant attempted to show that the dodgers containing the alleged libel were not released by the printing company until after they had been advised by a practicing attorney of Birmingham that same were not libellous. The court correctly sustained the objections interposed to all such questions. The maxim that ignorance of the law is no excuse is rigid and applies even to those who act in good faith and under advice of counsel. Miller v. United States, 4 Cir., 277 F. 721; Commonwealth v. Brisbois, 281 Mass. 125, 183 N.E. 168. Unless specific intent is an essential of the crime, the above rule is inflexible. Highly analogous is the decision of our Supreme Court in Hoover v. State, 59 Ala. 57, 58, wherein Stone, J. wrote:

"The Circuit Court did not err in refusing to receive testimony that, before the alleged marriage, the probate judge counselled the defendant it was lawful for him to marry a white woman. The maxim, 'Ignorantia legis, neminem excusat,' is a stern, but inflexible and necessary rule of law, that has no exceptions in judicial administration, and the former erroneous ruling of this court furnishes no excuse which we can recognize. Boyd v. The State, December term, 1876 (53 Ala. 601); Id., 94 U.S. 645 (24 L.Ed. 302).

"It is very true that to constitute a crime, there must be both an act and an intent. But, in such a case as this, it is enough if the act be knowingly and intentionally committed. The law makes the act the offence, and does not go farther, and require proof that the offenders intended, by the prohibited act, to violate the law. The act being intentionally done, the criminality necessarily follows."

■ Appellant's objection to the following question was overuled by the court:

"Q. Within a month or two prior to your election and within a month or two prior to the issue of this pamphlet that you hold in your hand marked State's Exhibit 'A,' I will ask you, whether or not you heard the defendant, Norman Krasner, say to you or to anyone in your hearing or presence, in effect these words,—if not these exact words, words to this effect, that because you had caused his license to

be revoked that he would get even with you, or words to that effect?"

Malice being an element of criminal libel, it is our opinion that this question was proper as bearing on the existence of malice on appellant's part.

■ The objection by the State to the question propounded to Mayor Bowers on cross examination as to his method of dealing with the town's gas rationing coupons was properly sustained. Such inquiry was irrelevant to this case.

Objections to the questions propounded to Mayor Bowers on cross examination as to whether he got the $1083 and whether he paid it back were properly sustained as these questions were immaterial and irrelevant to the issues.

■ Likewise the objections were properly sustained to the questions propounded to him during cross examination as to whether he had been placed on notice several times that the law prohibited Mayors in towns where there were no recorders from receiving fees or collecting costs, and whether if he received fees while acting as such recorder he is to pay them into the city treasurer. A town official is presumed to know the law relating to his duties, and his answers to the above questions would in nowise affect the issues in this case. In addition the questions as to the Mayor being placed on notice, etc. was vague, in that it is not shown by whom he was placed on notice.

We have carefully examined the written charges requested by appellant and refused by the court at the trial below. In our opinion the appellant was not injured by the court's action in refusing any of said charges. Many of them were bad, and should not have been given, while the principles set forth in others were either substantially covered by other requested written charges which were given, or by the excellent oral charge of the trial judge.

■ In his brief appellant particularly complains of the trial court's refusal to give written charges Nos. 2, 5, 14, and 23.

Charges 2, 5, and 14 were defective as not being predicated on the evidence. Edwards v. State, 205 Ala. 160, 87 So. 179; Davis v. State, 188 Ala. 59, 66 So. 67.

Requested charge 23 has had a tangled history in our cases. It has been held good in Bell v. State, 115 Ala. 25, 22 So. 526; Rogers v. State, 117 Ala. 192, 23 So. 82; Griffin v. State, 150 Ala. 49, 43 So. 197; Bailey et al v. State, 168 Ala. 4, 53 So. 296; Olden v. State, 176 Ala. 6, 58 So. 307; Clayton v. State, 23 Ala.App. 150, 123 So. 250; Bufford v. State, 23 Ala. App. 521, 128 So. 126; Dyson v. State, 28 Ala.App. 549, 189 So. 784. On the other hand this charge has been condemned in Henderson v. State, 120 Ala. 360, 25 So. 236; Campbell v. State, 182 Ala. 18, 62 So. 57; Whittle v. State, 213 Ala. 301, 104 So. 668; McDowell v. State, 238 Ala. 101, 189 So. 183; and Morgan v. State, 20 Ala.App. 467, 103 So. 76. In Campbell v. State, supra, it was characterized as confused, and not clearly stating an applicable principle of law, and in the Whittle case, supra, it was disapproved as not being predicated on the evidence, and for the use of the expression "probability of defendant's innocence." [213 Ala. 301, 104 So. 669.] See also Wilson v. State, 243 Ala. 1, 8 So. 2d 422, pertaining to refused charge 44 requested in that case. The latest expression of the Supreme Court found in the McDowell case, supra, disapproves this charge, and we are bound thereby.

During his argument to the jury the deputy solicitor made the following statement: "We don't have to look for a man from Georgia to come over here and sue for money." The appellant objected to this statement on the ground that he was a citizen of Alabama and of the Town of Warrior, and that, as a taxpayer, he had such right. The court overruled the objection and appellant reserved an exception.

While there is evidence in the record that appellant had participated in a suit against Bowers seeking to recover from him the $1083 collected by Bowers from the Town of Warrior for services as recorder, there is no evidence whatsoever in the record that appellant was, or ever had been a resident of Georgia. The argument is therefore clearly beyond the record and improper. However we feel that any injury resulting to appellant by referring to his residence in Georgia, a neighboring State whose historical ties are close to Alabama's, is too speculative to warrant a reversal of this case.

Affirmed.

PER CURIAM.

Reversed and remanded on authority of Krasner v. State, 248 Ala. 12, 26 So.2d 526.