95 So.2d 273

### Jimmie QUINN, Jr.

v.

### STATE.

5 Div. 492.

Court of Appeals of Alabama.

May 14, 1957.

Harry D. Raymon and Oliver P. Head, Tuskegee, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes and Geo. Young, Asst. Attys. Gen., for the State.

CATES, Judge.

This is an appeal from a jury verdict and judgment of conviction predicated upon an indictment laid in two counts, viz., first that Jimmie Quinn, Jr., burglarized the Tuskegee Institute Post Office (Code 1940, Title 14, § 86); and, second, that he feloniously took and carried away therefrom $113.97, the personal property of the United States of America. The verdict was general and the court sentenced the defendant to five years' imprisonment.

From the State's evidence, the jury could have inferred that on the night of May 5, 1955, the defendant was seen in the lobby of the Institute Post Office in a pay phone booth. A short time thereafter, the night watchman discovered that the building had been broken into. The next day in the presence of the sheriff and Messrs. King, Hodnett, Gore and Rowell, the defendant gave a confession to Mr. Abram Goode, a federal post office inspector, which confession defendant subscribed to with the sheriff of Macon County, Mr. Rowell, and Mr. Goode as the attesting witnesses. The

proper predicate was laid for its introduction, and there is nothing other than the defendant's testimony to show that any inducement was made for the statement other than the desire of the defendant at that time to tell the truth and placate his conscience.

Defendant's confession reads:

"Dated May 6th, 1955. I am 18 years of age and live with my parents near Tuskegee Institute, Alabama. I was 18 on February 11, 1955. About midnight on May 5, 1955 I broke into the post office at Tuskegee Institute, Alabama. I took some money from a drawer which I pried open with a jack handle. I do not know how much money I took, but I guess it was about $100.00. I entered the post office from the post office lobby by breaking a glass from a window between the work room of the post office and the lobby. After I removed the money from the drawer I went back through the window to the lobby and entered a telephone booth. I was trying to make a telephone call when the night watchman came through the lobby. I talked with him a few minutes and shortly thereafter I left. Prior to the time I broke the window to the work room I had tried to open the back door of the post office, by cutting a hole in the screen and prying the latch from the door. I had no help in entering the post office and on—no one was involved in the matter but me. I threw the tire tool out of the car south of Tuskegee, Alabama. After I left the post office I went to Club 29 between Tuskegee and Union Springs and spent all of the money except $10.00. I bought about eight pints of liquor and about six chicken suppers. The liquor was $4.00 a pint and the suppers cost about $1.30 each. I also bought some gin and beer for people who were attending a dance and I also paid $2.00 to get into the club. I swear that I spent all of the money I took from the post office except $10.00 last night and I paid $3.00 on a bill I owed this morning. That left $7.00 which I turned over to officers to be returned to the post office at Tuskegee Institute. I have read the above statement and it is true to the best of my knowledge. I have made this statement of my own free will without any promises or threats having been made to me and I know that it may be used against me. Signed Jimmie Quinn, Jr."

The defendant took the stand on his own behalf and denied being anywhere near the post office either before or after having been in the telephone booth. He stated that the confession was not true; that he had signed it upon the threat of the sheriff (made outside the presence of any other witnesses) that he was going to beat up the defendant; and also because the sheriff made the further inducement that he would assist the defendant in getting out in a short period of time. Belief of this cudgel and carrot conduct ascribed to the sheriff, together with all of the other circumstances attending the making of the confessison after its admission, were matters to be weighed by the jury, and do not present any reviewable question. The defendant also offered proof in support of a plea of insanity. This was also a jury question.

The following instructions submitted by the defendant were refused by the trial judge:

"Charge no. 11 The Court charges the jury that if they are not satisfied beyond a reasonable doubt, to a moral certainty, and to the exclusion of every other reasonable hypothesis but that of the guilt of the Defendant, then they should find him not guilty; and it is not necessary, to raise a reasonable doubt, and that the jury should find from all the evidence a probability of Defendant's innocence, but such a

doubt may arise, even when there is no probability of his innocence in the testimony, and, if the jury have not an abiding conviction to a moral certainty of his guilt, it is the duty of the jury to acquit him.

"Charge no. 12 The Court charges the jury that if there is from the evidence a reasonable probability of Defendant's innocence, the jury should acquit the Defendant."

As to Charge 11, at one time cases such as Bufford v. State, 23 Ala.App. 521, 128 So. 126, and Olden v. State, 176 Ala. 6, 58 So. 307, and others would have supported the requested charge as a correct statement of the law and its refusal as error. However, in accordance with the recent trend towards simplification of jury charges, this particular instruction has been disapproved by this court in Krasner v. State, 32 Ala. App. 420, 26 So.2d 519, and Mason v. State, 37 Ala.App. 122, 64 So.2d 606, and by the Supreme Court in Odom v. State, 253 Ala. 571, 46 So.2d 1.

The trial judge concluded his general charge:

"If, on the other hand, after considering all the testimony in the case, you have a *reasonable doubt* of this defendant's guilt of any offense embraced in this indictment, then you should acquit him, and in that event the form of your verdict would be: We, the jury, find the defendant not guilty." (Italics supplied.)

Charge 12 in this case appears as Charge 23 in Bankhead v. State, 33 Ala.App. 269, 32 So.2d 814, as Charge 26 in Carroll v. State, 36 Ala.App. 59, 52 So.2d 171, seemingly as Charge 51 in Coleman v. State, 37 Ala.App. 406, 69 So.2d 481, and Charge 5 in Nix v. State, 33 Ala.App. 603, 36 So.2d 452, is like Charge 12 here. See also May v. State, 35 Ala.App. 228, 45 So.2d 695. What was said there and in Russo v. State, 236 Ala. 155, 181 So. 502, applies here i. e.,

since the substance, yea more, of the request was covered by the general charge, no error lies, Code 1940, Title 7, § 273.

The defendant further states that the refusal of the above charges makes his argument as to the trial court's error all the more cogent because of his having interposed a plea of not guilty by reason of insanity, Code 1940, Title 15, § 422. The State refutes this contention upon the technical ground that the minute entry shows merely that issue was joined upon the indictment and a plea of not guilty. To support this, the State calls our attention to a statement in Pate v. State, 19 Ala.App. 243, 96 So. 649, that the failure of the judgment entry to show a plea of not guilty by reason of insanity is conclusive on appeal. The transcript of the testimony, including the judge's oral charge, abundantly supports the defendant's contention that a plea of not guilty by reason of insanity was properly made during the course of the trial and was one of the issues presented. We believe that whatever validity there might be in the Pate case has been essentially modified by the Supreme Court's doctrine in Neal v. State, 257 Ala. 496, 59 So.2d 797.

As to the merits of the defendant's contention, we hold that the trial court was not in error as to the insanity aspect in refusing Charges 11 and 12, since the court's oral charge on the subject of insanity appears to be adequate in the light of the law and the evidence in the case. Here the court charged the jury as follows:

"Now, gentlemen, as the court has already told you, in addition to pleading not guilty, the defendant has filed this special statutory plea of not guilty by reason of insanity. It is necessary then, gentlemen, for the court to charge you on the law regarding the plea of not guilty by reason of insanity in order that you may approach it with some degree of knowledge of what we

mean by a plea of not guilty by reason of insanity. The defense of insanity, or rather not guilty by reason of insanity, as pleaded by this defendant, as the court has already told you, must be specially pleaded, as it is pleaded in this case, because the defendant's other plea of not guilty, under our law, does not put in issue the question of the irresponsibility of the defendant by reason of his alleged insanity, and without this special plea, the defendant could not offer evidence of his insanity. The purpose of the statute in Alabama has been said to be to separate as far as possible the two offenses—the two defenses, not guilty, and not guilty by reason of insanity, and to have the proof directed to each of these defenses and the verdict to respond to each of these defenses. Your province then, gentlemen of the jury, in this case is to determine the truth of the charge against this defendant as embraced in this indictment. That is your first duty. And then to determine the truth of the plea of not guilty by reason of insanity which the defendant has filed. In the first place, then, gentlemen of the jury, you will determine from the evidence whether this defendant, Jimmie Quinn, Jr., has committed the acts charged against him in this indictment. That is your first inquiry. And if, under the rules which the court is giving you now, and will give you later on, you are convinced beyond a reasonable doubt from the evidence that the defendant did commit the acts charged in this indictment, then you must go further and determine whether or not the defendant's plea of not guilty by reason of insanity has been sustained. The court will say to you, gentlemen of the jury, that it has been said long ago by a distinguished Alabama jurist and other tribunals of this land, that reason being the common gift of God to every man, every man is presumed to be sane, and that is the natural and normal mental condition, and the court charges you then, gentlemen of the jury, that under the laws of Alabama, every person over fourteen years of age in this State charged with a crime is presumed to be responsible for his acts. Now, gentlemen, the burden of proving the plea of not guilty by reason of insanity and of proving that he is irresponsible is cast upon the defendant in this case, and the defendant has the burden of clearly proving to the reasonable satisfaction of the jury his plea of insanity. How do you find that out? From the testimony which you have heard here by witnesses who have testified about his mental condition. You had—you remember how many witnesses, and in addition to that, you had two psychiatrists, men who are learned in this field of mental diseases and psychiatry, and who are recognized in that field. You remember what they say. And the other witnesses who testified about this defendant's mental condition. And when a defendant then, gentlemen, invokes the defense of not guilty by reason of insanity under our Alabama law, the burden is placed on him by the law reasonably to satisfy the jury from the evidence, first, and this is very important, first, that the defendant was afflicted with a real mental disease to such extent that he was either idiotic or otherwise insane, and because of which he did not know right from wrong as applied to the particular act in question; or, and this is important, that the mental disease, if any, had destroyed the defendant's power to choose between right and wrong, and, lastly, that the crime was solely the product of the mental disease. That is the sound law in Alabama and Massachusetts and the other recognized tribunals of this nation. It is the law, then, gentlemen of the jury, that any person who at the time of the commission of an act which is charged

against him is in fact suffering from a diseased mind or mental disease, and by reason of this disease he is incapacitated to differentiate between right and wrong, he is not legally responsible for such an act; or, and this is important, if at the time of the commission of such act the defendant is in fact mentally diseased so as to be idiotic or otherwise insane, but notwithstanding such mental disease, he has the power to differentiate between right and wrong, but by reason of the duress of such disease he is incapacitated and powerless to choose between right and wrong, and is thus deprived of his free agency, and the criminal act charged against him is so related to such mental disease as cause to effect, as to be the product of it solely, the defendant is not legally responsible. As the court has already told you, gentlemen, every person over the age of fourteen years is presumed to be sane in the State of Alabama, and when a person accused of crime pleads not guilty by reason of insanity, the burden rests upon him to convince the jury reasonably from the evidence of the truth of this plea before it can be of any avail to him."

The defendant's counsel argues that, inasmuch as the alleged burglary and larceny touch federal property, the State had no jurisdiction, citing Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640.

The opinions of the Supreme Court of Michigan in People v. Burke, 161 Mich. 397, 126 N.W. 446, and In re Van Dyke, 276 Mich. 32, 267 N.W. 778 (certiorari denied Van Dyke v. State of Michigan, 299 U.S. 608, 57 S.Ct. 236, 81 L.Ed. 448), support the view that, particularly where there is no evidence of the site of a post office ɹrglary having been ceded, the State courts have jurisdiction to punish under State law. In Brooke v. State, 155 Ala. 78, 4ᴜ So. 491, the defendant's failure to show a cession to

the federal government upheld refusal of a charge requiring an acquittal of the defendant of assault and battery if the jury found the locus was a United States post office. In the Van Dyke case, the Michigan court said 276 Mich. at page 35 (267 N.W. at page 779):

"The only other question raised and worthy of consideration is whether the state authorities had any jurisdiction in the instant case in view of petitioner's claims that the United States government had exclusive jurisdiction over the crime. No objection whatsoever was made to the jurisdiction of the court at the trial. The Walloon Lake postoffice in the information is described as being in the township of Melrose in Charlevoix county. In affidavits filed in opposition to Van Dyke's petition for leave to present a motion for new trial it appears that the Walloon Lake postoffice is a fourth-class postoffice located in a building neither owned nor leased by the United States government, but owned by a private individual and rented to the postmaster. Sections of the United States Criminal Code under which the acts of petitioner might have been punished are modified by 18 U.S.C.A. § 547 (Cr.Code, § 326), which provides: 'Nothing in sections 1 to 553, 567, 568 and 571 of this title (Crimes) shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.' See People v. Burke, 161 Mich. 397, 126 N.W. 446. Moreover, we do not find that the specific crime of using explosives for the purpose of committing the crime of larceny is listed in the category of crimes set forth in any of the sections of the United States Criminal Code. In voluminous briefs petitioner claims that section 547, supra, is unconstitutional; that People v. Burke, supra, should be overruled. Even if there might be merit to petitioner's claim that the United States had exclusive jurisdiction if the offense

**114**

were committed upon premises owned and controlled by the government purchased by consent of the Legislature of the state, and used for postoffice purposes (Article I, § 8, cl. 17, Constitution of the United States), the Walloon Lake Postoffice does not come under such classification. It is neither owned by nor leased to the United States nor has the state of Michigan ever ceded jurisdiction over the premises. It is a fourth-class postoffice and under the laws of the United States and the postal regulations of the federal government, the government does not lease quarters for a fourth-class postmaster. A claim similar to the petitioner's was made in Brooke v. State, 155 Ala. 78, 46 So. 491, where it was shown that the postoffice in which the crime was committed was merely rented by the postmaster. The court properly held that the state court had jurisdiction."

18 U.S.C. § 547 quoted in the Van Dyke case has been revised and now appears in 18 U.S.C. § 3231, which reads:

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Of this sentence the opinion of the majority in Commonwealth of Pennsylvania v. Nelson, supra, said in footnote 10, at page 501 of 350 U.S., at page 480 of 76 S.Ct.:

"The office of the second sentence is merely to limit the effect of the jurisdictional grant of the first sentence. There was no intention to resolve particular supersession questions by the Section."

This caution deflates somewhat the assurance of the opinion in Van Dyke, supra. In recent years instances of preemption in favor of the general government have come in geometrical progression. Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126; Hill v. State of Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782; Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 786, 62 S.Ct. 491, 86 L.Ed. 754; Napier v. Atlantic Coast L. R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601. However, there was no evidence of this post office having been ceded so that the Assimilative Crimes Act (18 U.S.C. § 13) could apply as where murder during construction on a post office site ceded by Georgia was punishable in the federal court, Battle v. United States, 209 U.S. 36, 28 S.Ct. 422, 52 L.Ed. 670.

Indeed, the postmaster testified he paid the rent. Whether or not the postmaster was an independent contractor or an officer of the United States (see Deal v. United States, 274 U.S. 277, 47 S.Ct. 613, 71 L.Ed. 1045, and United States v. Fordyce, D.C., 122 F. 962) is immaterial as to the burglary count which described the post office as being "in the possession of Larry Robinson," the postmaster. Thus, in Adams v. State, 13 Ala.App. 330, 69 So. 357, it was said that, in charging a burglary committed in the State Capitol, the "ownership" of the office space entered would be laid in the actual occupant, e. g., the State Health Officer. We construe a postmaster, a public officer, as being other than a mere servant of the United States so far as his occupancy of the premises is concerned. Pipkin v. State, 21 Ala.App. 179, 106 So. 391; Aldridge v. State, 88 Ala. 113, 7 So. 48.

Whatever might be our guess, educated or otherwise, as to the outcome of the

preemption question presented here, after considering a good part of the voluminous literature concerning the Nelson case, supra, we nevertheless arrive at this one palpable fact, i. e., the Supreme Court has never held that a state may not punish for burglary of a post office. Indeed, the Van Dyke case, supra, was taken there on certiorari. On the contrary, many states have punished for burglary of a post office. The nature of the judicial process is not to define abstract principles of law and then apply them to sets of facts, but rather to consider the facts of a case in the light of facts of previous cases and apply to the case at hand such principles as clearly arise from precedent.

The Post Office Department of the United State operates as a business enterprise; in the field of first class mail, it is a monoply. "The Postal Service is one of the largest public service institutions in the country and although it is conducted by the Government, its relation to the citizens—its patrons—is of a business rather than a Governmental nature." Foreward, United States Official Postal Guide, Part I (Vol. 4, No. 1, July, 1951). We consider that is is entitled to the protection of the police power of the State of Alabama, just as much as any other business. Accordingly, inspite of the wide sweep of the language of the majority opinion in the Nelson case, we do not consider that the factual and legal circumstances therein can be transplanted into the field here under consideration. We conclude, therefore, that the pertinent provisions of Title 18 U.S.C., such as § 1707 (theft of post office property) or § 2115 (breaking and entering a building containing a post office), do not hinder the courts of this State as shown on this record.

Conformably with the statute, we have reviewed the entire record and find no error therein. The judgment of the circuit court is, therefore,

Affirmed.