**Jack Martin FARLEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 24139.**

United States Court of Appeals
Fifth Circuit.

July 6, 1967.

Certiorari Denied Nov. 6, 1967.

See 88 S.Ct. 303.

Jack R. Nageley, Miami Beach, Fla., for appellant.

James W. Matthews, Michael J. Osman, Asst. U. S. Attys., Miami, Fla., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before RIVES and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

RIVES, Circuit Judge:

On a jury's verdict, Farley was adjudged guilty of forcibly attempting to break into the Ludlam Branch of the United States Post Office at Miami, Florida, with intent to commit larceny or other depredation therein, in violation of Title 18 U.S.C. § 2115.

At about 2:30 A.M., April 27, 1966, two deputy sheriffs, acting on a tip from a postal inspector, were checking post offices in Dade County, Florida. As they approached the Ludlam branch, they observed two men standing near a wall of the building. The officers split up to approach the area. As they approached, one of the officers yelled "halt." The two men fled into an adjacent vacant area. A hole was observed in the wall of the post office at the point at which the men were standing. Two men were arrested by the officers in the nearby area. Farley was found squatting in some bushes. He was then wearing gloves. He was told that he was under arrest for burglary. Following the arrests, the officers searched the area and found a sledge hammer and crowbar. Farley was taken to a sheriff's substation and was later that morning interrogated by a postal inspector. Subsequently, a federal warrant was obtained and served on him sometime the next day.

■ On appeal Farley's counsel makes three contentions of error. First, he insists that the state officers had no authority to arrest for a federal offense and, hence, that the search and seizure incident to the arrest were illegal. Florida Statutes § 901.15 F.S.A. provides in part that a peace officer may, without warrant, arrest a person who has committed a felony or misdemeanor in his presence. We would be surprised if a state officer could not legally arrest a person who has committed a federal felony in his presence. The case principally relied upon, Gambino v. United States,

1927, 275 U.S. 310, 48 S.Ct. 137, 72 L. Ed. 293, does not so hold, but turns on the absence of probable cause. In any event, it is clear that the federal statute, 18 U.S.C. § 2115, does not so pre-empt the field as to prevent a valid arrest by state officers for burglary, and that was the offense for which Farley was originally arrested.[1]

■ Second, evidence that Farley was wearing gloves at the time of his arrest was, of course, admissible. Upon the motion to suppress, the government had agreed not to refer to anything found in the automobile discovered about five blocks from the post office. Clearly, that agreement had no reference to the gloves worn by Farley when he was arrested.

The third contention seems to us the only one having any sign of substance. To negative any possible explanation for Farley's presence at the scene, the government sought to prove that he lived at a considerable distance. The evidence offered took the form of an admission by Farley, obtained under circumstances which it is claimed did not meet constitutional standards for protection of the privilege against self-incrimination as announced in Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. On the morning of his arrest, Farley was interviewed by W. P. Jorgensen, a postal inspector, the gist of whose testimony follows:

"Q. What was the first thing you said to Mr. Farley at that time, sir?

"A. I introduced myself, identified myself, told him my name was Jorgensen, that I was a postal inspector in Miami.

"Q. What was the next thing you said to him, sir?

"A. I then advised Mr. Farley that he did not have to say anything; that anything he did say can be used against him in court.

---

1. See Quinn v. State, 1957, 39 Ala.App. 107, 95 So.2d 273, 279, 280; State v. Huff, 1944, 352 Mo. 1161, 181 S.W.2d 513; Sims v. State, 1933, 124 Tex.Cr.R. 108, 60 S.W.2d 452; People v. Burke, 1910, 161 Mich. 397, 126 N.W. 446.

I advised him he had the right to an attorney. At that point, Mr. Farley said, 'My attorney is J. C. Lee, in Fort Lauderdale.'

"Q. Do you know Mr. Lee, sir?

"A. No, Sir. I think that gentleman sitting there is Mr. Lee. (Indicating.)

"Q. What was the next thing that you said to him, sir?

"A. I asked him if he cared to discuss what had taken place earlier that morning.

"Q. What did he say?

"A. He referred me to Mr. Lee.

"Q. Did you ask him anything else after that, sir?

"A. I asked Mr Farley if he would tell me where he lived.

"Q. What did he tell you, sir?

"A. He said he lived at 1040 Opalocka Boulevard in Miami.

"Q. Was that the extent of your interview?

"A. Yes, sir."

Prior to this testimony in the presence of the jury the government had made a proffer out of the jury's presence in which Jorgensen had testified that he did not have a chance to tell Farley that he had the right to have an attorney present during the interview before Farley interrupted to say that his attorney was Mr. J. C. Lee of Fort Lauderdale. After Farley declined to discuss anything that had happened that morning and referred Jorgensen to Mr. Lee, Jorgensen made one further inquiry, "Will you tell me where you live?", to which Farley responded that he lived at 1040 Opalocka Boulevard.

The place where Farley lived was, of course, not a matter within Farley's exclusive knowledge, and he no doubt recognized that a little investigation by the officers would locate that place. It was a circumstance having at most a remote bearing upon his guilt or innocence. There was no evidence of any oppressive or overbearing circumstance.

Indeed, the officer's inquiry took the form of a mere request. True, *Miranda* teaches that, "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473, 474, 86 S.Ct. at 1627. Under the circumstances of this case, that direction was faithfully executed with the possible exception of the further inquiry, "Will you tell me where you live?" Under all of the circumstances of this case, it does not seem reasonable to apply *Miranda* so strictly as to exclude the response to that inquiry.

The judgment is affirmed.