284 So.2d 296

**Lester David BALL**

v.

**STATE.**

**7 Div. 194.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rowan S. Bone, Gadsden, for appellant.

William J. Baxley, Atty. Gen., and Daniel B. Banks, Jr., Special Asst. Atty. Gen., Huntsville, for the State.

HARRIS, Judge.

Appellant was convicted of robbery and his punishment fixed at ten (10) years imprisonment in the penitentiary. He is at liberty pending appeal.

On the night of February 11, 1971, a man walked into an E–Z Curb Store on Hoke Street in the City of Gadsden, Alabama, got a Dr. Pepper from the drink machine and stood around until all customers left, and then at pistol point robbed a seventy-two (72) year old man employee in charge of the store. The amount of money involved was $112.87. The robber told the employee to give him the money from the cash register or he would "shoot your G.D. brains out." As the robber was leaving the store, he came face to face with, and brushed into, another man entering the store to get some information as to a street address. The employee gave this man a dime and asked him to call the Police Department and give them a description of the robber. The police were informed the robber had long hair, goatee, heavy beard and sideburns and was driving a 1963 Ford automobile. Within an hour a suspect fitting this description was taken into custody near the Coliseum. The victim of the holdup was carried by a police squad car to the Coliseum where he immediately identified the suspect as the holdup man. The suspect was then carried to the station house and placed in a lineup with four other men. The victim and the man who came in the store as the robber was leaving both picked out a suspect and positively identified him as the holdup man. *It was a clear case of mistaken identity. Appellant was not in the lineup.* The man they identified was one Bobby Ray Daniels. Daniels was charged with the robbery.

Captain James A. Bragg of the Gadsden Police Department came to the robbery scene and got the Dr. Pepper bottle. At that time he worked in the Bureau of Criminal Identification and Investigation. He qualified as an expert on fingerprint identification. Around midnight on the date of the robbery, Captain Bragg lifted a latent print from the Dr. Pepper bottle.

He compared this print with a number of known prints on file with the Gadsden Police Department and found a print that was identical to the fingerprint he lifted from the bottle. The known print was appellant's. Captain Bragg reported his findings to the Chief of the Police Department with the statement that the Department had the wrong man in jail. A warrant was issued for the arrest of appellant and another lineup was conducted. The victim of the robbery and the other witness separately viewed this lineup and both identified appellant as the holdup man. They both made positive in-court identifications pointing to appellant as the robber.

Bobby Ray Daniels was discharged on a writ of habeas corpus and he was not indicted.

Appellant's defense was an alibi. He and his wife, his brother and his wife testified that they left Gadsden around noon on February 11, 1971, for Chattanooga, Tennessee, and did not return to Gadsden until twelve o'clock that night; that the purpose of the trip was to find a tattoo place and have a tattoo on appellant's arm removed or covered over. The tatoo was the initials of a girl that appellant had gone with before he married.

Appellant returned from Viet Nam on November 26, 1970, and married the following December 4th. His bride of two months objected to the initials of his former girlfriend. They all testified they were unable to locate a tattoo parlor. They ate dinner and window shopped before starting the return trip.

The jury did not buy appellant's alibi and he was convicted of robbery.

The only insistence of error on this appeal is the refusal of the trial court to give the jury two of appellant's written instructions. Appellant requested forty-four (44) written charges and the trial court gave forty (40) of them and refused four (4). The two refused charges on which a reversal is sought are as follows:

"2. The Court charges the jury that unless the evidence against the Defendant should be such as to exclude to a moral certainty every hypothesis but that of his guilt of the offense imputed to him, you msut (sic) find the defendant not guilty.

\*    \*    \*    \*    \*    \*

"29. The Court charges the jury that the burden of proof is upon the State, and it is the duty of the State to show, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis, every circumstance necessary to show that the defendant is guilty before the defendant is required ti (sic) introduce any evidence in his favor or to explain any circumstances surrounding him, and if there is a reasonable doubt of this defendant's guilt, then you must acquit the defendant."

■ Refused charge two (2) was approved by the Supreme Court in Smith v. State, 145 Ala. 17, 40 So. 957, and refused charge twenty-nine (29) was approved by the Court of Appeals in Fetner v. State, 22 Ala.App. 128, 113 So. 467, and could well have been given in this case. However, the refusal of these charges will not work a reversal if the same principle of law was covered in the oral charge of the Court or in the other written charges given at the request of appellant. We must, therefore, examine the record proper, including the oral charge, in disposing of the matters now presented. Brown v. State, 249 Ala. 5, 31 So.2d 681.

The record reflects that of the forty (40) charges given at the request of appellant, five (5) relate to moral certainty instructions, twenty-seven (27) relate to reasonable doubt instructions and two (2) are combinations of reasonable doubt and moral certainty instructions.

■ In Jones v. State, 100 Ala. 88, 14 So. 772, it was said .that the expressions, "to a moral certainty", and "beyond a reasonable doubt", are legal equivalents. A

written charge to the jury in a criminal case which predicates a conviction of the defendant upon a belief, to a moral certainty, of his guilt, from the evidence, is the equivalent of one which predicates a conviction upon their belief beyond a reasonable doubt of defendant's guilt, from the evidence. See also McKleroy v. State, 77 Ala. 95, 97, and Bailey v. State, 133 Ala. 155, 32 So. 57.

■ An examination of the record and the oral charge of the court clearly reveals that the same rule of law enunciated in the two refused charges was substantially and fairly covered in the court's oral charge to the jury as well as in several of the charges given at appellant's request, and particularly given charges twenty-one (21) and thirty-seven (37). The Reporter will set these charges out in the report of the case.[1]

The following citations are in point. Cooper v. State, 277 Ala. 200, 168 So.2d 231; White v. State, 42 Ala.App. 249, 160 So.2d 496; Quinn v. State, 39 Ala.App. 107, 95 So.2d 273; Title 7, Section 273, Code of Alabama 1940.

We have carefully searched the record for errors, any error, that affect the substantial rights of appellant and have found none. The case is due to be affirmed and it is so ordered.

Affirmed.

All the Judges concur.

---

1. Charges 21 and 37 were as follows:

21. The Court charges the jury that the only just foundation for a verdict of guilty in this case is that the jury shall believe from the evidence, beyond a reasonable doubt and to a moral certainty, that the defendant is guilty as charged in the indictment to the exclusion of every probability of his innocence and every reasonable doubt as to his guilt, and if the testimony in this case has failed to furnish the aforesaid measure of proof and to impress the minds of the jury with such proof of the defendant's guilt, then the jury should find him not guilty.

37. The Court charges the jury that if you are not satisfied beyond a reasonable doubt, to a moral certainty, and to the exclusion of every other reasonable hypothesis but that of guilt of the defendant, then you should find him not guilty; and it is not necessary to raise a reasonable doubt that the jury should find from all the evidence a probability of defendant's innocence, but such a doubt may arise even when there is no probability of his innocence in the testimony, and if the jury has not an abiding conviction to a moral certainty of his guilt, it is the duty of the jury to acquit him.