Robbery in the first degree; life.
Mrs. Eula Mae Jackson testified that on the evening of November 2, 1980, she, her three children, and her boyfriend, Barry Cook, were at her home when two men knocked at the door. Mrs. Jackson recognized the appellant as one of the two men and opened the door slightly to see what they wanted. Appellant and his companion pushed their way inside and demanded all her money. When she replied that she did not have any money, appellant's companion pointed a gun at her while appellant went through her purse. She stated that jewelry valued at approximately $300, and cash in the amount of five to twenty-five dollars were taken. While the unknown companion held her at gunpoint, appellant went upstairs. *Page 294 
Mr. Barry Cook testified that he was upstairs watching TV when he heard one of Mrs. Jackson's children scream, "Please don't shoot my mother." He removed a gun kept under the mattress, confronted appellant, who had reached the top of the stairs, and told him not to move or he would kill him. Meanwhile, appellant's companion ran from the house and Mrs. Jackson and Mr. Cook held appellant until the police arrived.
 I
At the close of the State's case, appellant moved to exclude the testimony of Mrs. Eula Mae Jackson on the ground that she had lied under oath, and moved to exclude all the State's evidence, arguing that it did not establish a prima facie case of first degree robbery because there was "no evidence that any weapon that was used was operable and/or was loaded." We find no error in the denial of the motions.
Although there were inconsistencies in Mrs. Jackson's testimony, and a conflict between her testimony and that of Birmingham Police Officer Thomas Martin, these discrepancies do not furnish grounds for a motion to exclude her testimony. They presented questions of fact for the jury, see Meade v. State,390 So.2d 685 (Ala.Cr.App.), cert. denied, 390 So.2d 693 (Ala. 1980).
In addition, the motion to exclude all the State's evidence was properly overruled because, under § 13A-8-41 (b), Code of Alabama (1975), it was unnecessary for the State to prove the gun was "operable and/or loaded." Section 13A-8-41 (b) provides the following:
 "Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed." [Emphasis added]
The commentary to § 13A-8-41 (b), supra, explains that the section sets up, in effect, a presumption that any firearm is a deadly weapon for purposes of bringing the offense within the definition of robbery in the first degree:
 "A difficult area is robbery by use of an unloaded, inoperable or dummy weapon. The basic theory of this article is to protect the citizen from fear for his or another's health and safety. This should be aggravated only when there is actual serious physical injury inflicted or when the robber possesses an instrument which is readily capable of inflicting such injuries. However, it is sometimes difficult to prove that defendant actually was armed with a dangerous weapon, unless he is apprehended at the scene. In an effort to balance the needs for enforcement with the demands for appropriate penalties, § 13A-8-41 makes possession of an object reasonably believed to be a `deadly weapon' or `dangerous instrument," as defined in § 13A-1-2, or a representation by the defendant that he has one, prima facie evidence that he is armed."
In order to reduce the grade of the offense, the defendant must then rebut the presumption:
 "If in fact the defendant refutes this, he may still be convicted of robbery in a lesser degree. This provision is consistent with other recent criminal codes, e.g., Colorado Criminal Code, § 40-4-302; Michigan Revised Criminal Code, § 3305; and New York Penal Law, §§ 160.10, 160.15, amended 1969, so as to make the unrebutted appearance of a loaded firearm robbery in the first degree, and even the display of what appears to be a firearm, but shown by the defendant to have been unloaded, robbery in the second degree." [Emphasis added]
We think it clear that when appellant's companion held Mrs. Jackson at gunpoint while appellant ransacked her purse, she was reasonably led to believe the gun to be a deadly weapon. See Lidge v. State, 419 So.2d 610 (Ala.Cr.App. 1982), and authorities cited therein. Because appellant presented no evidence to rebut the presumption *Page 295 
that his companion's gun was loaded, we find that the verdict of first degree robbery was fully warranted by the evidence.
The fact that it was appellant's companion, and not appellant, who held the gun is immaterial. The jury could reasonably have concluded that appellant was present "to render assistance should it become necessary" in the robbery, seeWhite v. State, 42 Ala. App. 249, 160 So.2d 496 (1964), and was therefore guilty of first degree robbery on the theory of aiding or abetting, see Ala. Code § 13A-2-23 (1975) (Commentary).
 II
Appellant insists that the trial court erred when it denied his motion for a mistrial following the victim's description of appellant as a "rogue." From the record:
 "Q. [By defense counsel] As a matter of fact, he had been to your house before, hadn't he?
"A. No. He has never been to my house before.
"Q. As a matter of fact —
 "A. Because I didn't deal with people — with him. I know the people that he dealt with and all of them were rogues. And I just didn't deal with those people.
"Q. O.K.
 "MR. WAITES: [Defense counsel] And, Judge, we object to that as being unresponsive.
 "THE COURT: Sustained. Disregard it, ladies and gentlemen. It's not responsive.
"MR. WAITES: And we ask for a mistrial.
"THE COURT: Overruled.
"MR. WAITES: We except.
 "THE COURT: Does everyone here understand that that's to be disregarded and not to be considered. All right. I see affirmative acts on the part of the jury."
In our judgment, any prejudice to appellant caused by the witness' remark was cured by the judge's prompt instruction to the jury. See Barbee v. State, 395 So.2d 1128 (Ala.Cr.App. 1981).
 III
Appellant claims that the trial court erred by granting the State's challenge for cause to one of the prospective jurors. The venireman stated that he knew both the victim and the appellant. He lived in the same neighborhood with appellant and his nephew lived next to the victim. When asked whether he could give each side a fair hearing on the evidence, the following occurred:
"JUROR: I wouldn't want to vote either way.
 "MR. VAUGHN: [Assistant district attorney] Sir? I didn't hear what you said.
"JUROR: I wouldn't want to vote either way.
"MR. VAUGHN: Your Honor, I'd like to make a motion.
 "THE COURT: All right. In other words, what you're telling us, Mr. Cobb, is that even though your verdict would have to be based on the evidence and the law, because of your acquaintanceship with both of these people that that acquaintanceship with both these people would prevent you from deciding the case on the law and on the facts?
 "JUROR: Well, it's a possibility that it might. I might be a little prejudiced since I know both of them.
 "THE COURT: I see. All right. That's exactly why these questions are asked, Mr. Cobb, and we appreciate you very much answering them. Very much so. And for that reason I'm going to excuse you.
 "MR. WAITES: [Defense counsel] Of course, we would enter an objection, Judge."
Although the prospective juror's answers indicated reluctance and hesitation rather than definite inability to decide the case on the evidence alone, the trial judge was in a position to observe the demeanor and determine the prejudice of the venireman. The decision of a trial court to disqualify *Page 296 
a juror on a challenge for cause is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Motes v. State, 356 So.2d 712
(Ala.Cr.App.), cert. denied, 356 So.2d 720 (Ala. 1977). We do not find an abuse of discretion here.
 IV
During closing argument by the State the following occurred:
 "MR. VAUGHN: It sets up a standard whereby two people could team together and rob someone and as long as one didn't appear to be particularly active in the robbery he gets to walk off scot-free. It's pretty easy for somebody to get —
 "MR. WAITES: Judge, that's improper about what other people do or might not do or can do. We're talking about this case right here. And I object to it. He knows that's improper argument.
"THE COURT: Overruled."
From the portion of the district attorney's argument in the record before us, it is difficult to determine the context in which the quoted statement was made. However, it appears that the remark was a reply to argument by the defense, and was a legitimate comment on the fact that one does not escape criminal liability because he is the more passive accomplice without a weapon. In our judgment, the statement was not beyond the scope of permissible argument. See Payne v. State, 261 Ala. 397, 74 So.2d 630 (1954).
 V
At appellant's sentencing hearing the State introduced judgment entries of two prior convictions: one, of "Luther Carter" in Jefferson Circuit Court for theft of property in the first degree; and the other, of "Luther Charles Carter" on a two-count federal indictment in the Northern District of Alabama involving a check stolen out of the United States mail and presented with a forged endorsement. The sentence for each conviction was two years.
Finding that appellant had been previously convicted of two prior felonies and then had committed a Class A felony, the trial court sentenced appellant to life imprisonment according to the Habitual Felony Offender Statute, § 13A-5-9, Code of Alabama 1975.
Appellant claims that the prior convictions were erroneously used against him because (1) the State did not prove he was the same person convicted of the named prior offenses, and (2) the State did not prove that the prior offenses were felonies.
In Murphy v. State, 399 So.2d 340 (Ala.Cr.App.), cert. denied, 399 So.2d 347 (Ala. 1981), this court held that the identity of the name on the record of a prior conviction raises "a prima facie presumption," which if not rebutted by the defendant, is sufficient to show "the sameness of the person." 399 So.2d at 346. The name "Luther Charles Carter" on the prior federal conviction was identical, but the name on the State conviction omitted the middle name "Charles."
The judgment entry of the State conviction, however, revealed the same race, sex, birthdate and address as those given for the appellant on the affidavit and arrest warrant in the present case. Under these circumstances, we believe the evidence was sufficient to identify the appellant as the man previously convicted in Jefferson Circuit Court for theft of property in the first degree. See McCord v. State,373 So.2d 1242 (Ala.Cr.App. 1979).
Rule 6 (b)(3)(iv) of the Alabama Rules of Criminal Procedure — Temporary Rules provides the following definition of a "felony" for purposes of sentencing under the Habitual Felony Offender law:
 "Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130 (4), Acts of Alabama 1977, p. 812 (§ 13A-1-2 (4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980." *Page 297 
Section 13A-1-2 (4), Code of Alabama 1975, provides that an offense is a felony if the sentence authorized is over one year's imprisonment. It is clear, therefore, that appellant's prior conviction in Jefferson Circuit Court on February 8, 1980, carrying a possible term of imprisonment for two to twenty years, is a felony.
In order to determine whether appellant's conviction in federal court was correctly used to enhance his punishment we must decide whether "the conduct made the basis of that conviction constitutes a felony under . . . § 13A-1-2 (4) . . . or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980." A.R.Cr.P. 6 (b)(3)(iv).
The federal judgment entry recited that on December 20, 1976, appellant entered a plea of guilty to an offense characterized by the following conduct:
 "Defendant . . . aided and abetted by another, did unlawfully possess a check which had been stolen out of the United States mail, Count 1; aided and abetted by another, did unlawfully utter and publish a forged endorsement on the back of a check drawn upon the Treasury of the United States, Count 2."
The first question to be answered in deciding whether a federal offense constitutes a felony for purposes of the Habitual Felony Offender Act is whether there is a State counterpart for the federal crime. See generally Annot., 65 A.L.R.3d 586 (1975); Annot., 19 A.L.R.2d 232 (1951). Of course, if the federal government has exclusive jurisdiction over the offense because it was committed within the special maritime or territorial jurisdiction of the United States, or because it was committed on land purchased by or ceded to the United States, there can be no prosecution for a corresponding State crime. See 18 U.S.C. § 7 (1964). See also Quinn v. State,39 Ala. App. 107, 95 So.2d 273 (1957) (federal crimes of theft of post office property and burglary of building containing post office did not preclude State court jurisdiction over crime of burglary where post office space was merely rented by rather than ceded to, United States).
Similarly, if Congress has preempted a particular field of legislation, the overriding federal interest there prevents a State from enforcing its criminal laws on the same subject. See, e.g., City of Burbank v. Lockheed Air Terminal,411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (Federal Aviation Act preempts State and local control of aircraft noise);Commonwealth v. Nelson, 350 U.S. 497, 76 S.Ct. 477,100 L.Ed. 640 (1956) (Smith Act preempts state sedition laws aimed at overthrow of national government).
If, however, the federal government does not have exclusive jurisdiction over an offense by virtue of the territoriality or preemption principles, then a crime against the United States may also be prosecuted as an offense against a state, i.e., there is concurrent federal-state jurisdiction. See 18 U.S.C. § 3231
(1970).
The first count contained in the judgment entry of appellant's federal conviction is apparently based upon18 U.S.C. § 1708 (1970), which provides, in pertinent part, the following:
 "Whoever steals, . . . from or out of any mail,, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter . . . or
 "Whoever buys, receives, or conceals or unlawfully has in his possession, any letter, . . . which has been so stolen, . . . as herein described, knowing the same to have been stolen . . .
 "Shall be fined not more than $2000 or imprisoned not more than five years, or both."
Although Alabama has no criminal statute analogous to § 1708, supra, proscribing theft of mail or possession of stolen mail, this State does proscribe the receiving, retaining or disposing of stolen property. See Ala. Code § 13A-8-16 (1975). In our judgment, however, Alabama would not have had jurisdiction to prosecute appellant for the conduct made the basis of Count 1 of *Page 298 
his federal conviction since, based on an early federal case, the United States Courts appear to have exclusive jurisdiction of crimes relating to mail theft. See United States v. Eddy, 25 F. Cas. 975 (C.C. N.D.Ill. 1858) (No. 15,024).
In Eddy, the defendant was a jailer prosecuted under the predecessor to § 1708, supra, for retrieving from the post office, and reading, a letter written by a prisoner. The court stated the following:
 "When [a letter] is placed within the legal custody of the officers or agents of the department, and while it continues there, the laws of the United States operate on it, and not the laws of the State. In what has been said, the court refers of course to letters while in such custody and on deposit, or in transit to the places or persons addressed. . . ." 25 F.Cas. at 975-76. See also United States v. McCready, 11 F. 225 (C.C.W.D.Tenn. 1882).
We also conclude that Alabama may be precluded from prosecuting offenses involving mail theft by virtue of the preemption doctrine. The range of offenses involving the United States mails clearly demonstrates Congressional concern in this area. See, e.g., 18 U.S.C. § 1698 (prompt delivery of mail from vessel); § 1700 (desertion of mails); § 1702 (obstruction of correspondence); § 1706 (injury to mail bags); § 1707 (theft of post office property); § 1716 (injurious articles nonmailable); and § 1728 (weight of mail increased fraudulently).
We therefore hold that the conduct made the basis of Count 1 of appellant's federal conviction would not have constituted a felony in Alabama according to A.R.Cr.P. 6 (b)(3)(iv). Thus, had appellant's conviction rested on Count I alone, the State of Alabama would have been precluded from using it to enhance his punishment.
Count 2 of appellant's judgment of conviction, however, is not directly related to mail theft and is not subject to the exclusive jurisdiction of the federal courts. Although the uttered check described in Count 2 is undoubtedly the same check referred to in Count 1 as stolen from the United States mail, Count 2 is based on the separate offense outlined in18 U.S.C. § 495 (1976). That section provides, in pertinent part, the following:
 "Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or
 "Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; . . .
shall be fined not more than $1,000 or imprisoned not more than ten years or both. [Emphasis added]
The conduct described in Count 2 and proscribed by § 495, supra, is equivalent, under Alabama law, to criminal possession of a forged instrument in the second degree, which is a Class C. felony. See Ala. Code § 13A-9-6 (1975). Section 13A-9-6, supra, provides the following:
 "A person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument of a kind specified in section 13A-9-3 with knowledge that it is forged and with intent to defraud."
Section 13A-9-3 specifies the following instruments:
 "(1) A deed, will, codicil, contract, assignment or a check, draft, note or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or
 "(2) A public record, or an instrument filed or required or authorized by law to be filed in a public office or with a public employee; or
 "(3) A written instrument officially issued or created by a public office, public employee or government agency." *Page 299 
In our judgment, the check described in Count 2 of appellant's federal conviction falls within either subsection (1) or subsection (3) of § 13A-9-3, supra, as respectively, a "check," or a "written instrument officially issued . . . by a . . . government agency." See Ala. Code § 13A-8-1 (5) (1975) (The United States is a "government agency").
Furthermore, the intent and scienter requirements for convictions under either the federal or State statute are identical. The federal offense specifies an "intent to defraud the United States" and "knowing [the writing] to be false."18 U.S.C. § 495, supra. See also United States v. Eddy,597 F.2d 430 (5th Cir. 1979). The Alabama statute requires "knowledge that [the instrument] is forged and with intent to defraud." Ala. Code § 13A-9-6, supra.
Therefore, Count 2 of appellant's conviction in the United States District Court for the Northern District of Alabama furnishes the basis for his enhanced punishment pursuant to §13A-5-9 (b)(3), Code of Alabama 1975.
There is no error in the record. The judgment and conviction of the Jefferson Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.